# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00333-CR

**Francisco Javier Iniquez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-10-301646, HONORABLE KAREN SAGE, JUDGE PRESIDING

### O P I N I O N

A jury convicted appellant Francisco Iniquez of aggravated assault. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). The trial court sentenced Iniquez to fifteen years' imprisonment. On appeal, Iniquez argues that the trial court erred by (1) failing to determine *sua sponte* whether Iniquez was competent to stand trial and (2) excluding expert psychological testimony that would have negated the applicable mens rea for assault. We affirm the judgment of the trial court.

### BACKGROUND

On August 2, 2010, Riley Davis was walking home from his job as a bus driver when he observed Iniquez on the sidewalk, talking to himself and yelling at passing vehicles.[1] Davis crossed the street in an attempt to avoid Iniquez, but Iniquez followed Davis and began yelling at him. Iniquez

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

accused Davis of calling law enforcement on Iniquez on some previous occasion. Davis told Iniquez that he did not know him, but Iniquez continued to approach Davis.

As Iniquez approached, he took out a small folding knife and began to threaten Davis by swinging the knife back and forth. Davis used his backpack to shield himself from the knife, but Iniquez managed to cut Davis on his ring-finger. Davis attempted to retreat but eventually became cornered near a construction site. Davis picked up a rock from the ground and threw it at Iniquez, striking him in the head. Iniquez fell to the ground and began to convulse. At that moment, officers with the Austin Police Department arrived on the scene. Iniquez, who suffered a fractured skull during the attack, was taken to the hospital for surgery. Iniquez was subsequently arrested and charged with aggravated assault. *See id.*

Prior to trial, Iniquez filed two "motions for psychological examination" to determine whether he was competent to stand trial. The court granted both motions, which resulted in two separate orders for two separate examinations, one performed by Dr. Richard Coons, a psychiatrist, and the other conducted by Dr. Dusty Humes, a clinical psychologist. Both Dr. Coons and Dr. Humes concluded that Iniquez was competent. Dr. Coons, who examined Iniquez in September of 2010, noted that Iniquez had a "slight memory deficiency" as a result of a traumatic brain injury from the altercation. However, Dr. Coons concluded that Iniquez could understand the legal proceedings against him and could assist in his defense. Similarly, Dr. Humes, who examined Iniquez in November, noted that Iniquez could not remember certain events surrounding the altercation but that he had "no other cognitive deficits that would cause him to be unable to participate fully in his own defense." There was no subsequent motion or hearing to determine Iniquez's competency to stand trial.

2

At trial, the State presented three witnesses, including an eye-witness who corroborated Davis's narration of the assault. After the State rested, the trial court asked Iniquez's counsel if they would be presenting any witnesses. His counsel stated that they intended to call Dr. Humes, the psychologist who performed Iniquez's competency examination, to testify that Iniquez's mental condition prevented him from forming the necessary mens rea to commit an assault. Iniquez's counsel stated that Dr. Humes would testify about Iniquez's memory loss and his alleged post-traumatic stress disorder. The trial court excluded the expert testimony as irrelevant and misleading. *See* Tex. R. Evid. 402, 403. After the close of evidence, the jury convicted Iniquez of aggravated assault. The trial court sentenced Iniquez to fifteen years' imprisonment. This appeal followed.

## DISCUSSION

### *Failure to conduct a competency hearing*

In his first point of error, Iniquez asserts that the trial court erred in failing to *sua sponte* determine whether he was competent to stand trial. The conviction of an accused person while he is legally incompetent to stand trial violates due process. *See McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2009). A defendant is deemed incompetent to stand trial if he does not have "(1) a sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2007). A defendant is presumed to be competent to stand trial, and incompetence must be established by a preponderance of the evidence. *Id.* art. 46B.003(b).

3

The procedure by which a trial court determines competency is set out in article 46B of the Texas Code of Criminal Procedure. *See id.* arts. 46B.001–46B.171 (West 2007), art. 46B.004(c-1) (West Supp. 2011). This determination involves a two-step process: first, an informal "competency inquiry"; and second, if applicable, a mandatory "competency examination" and formal "competency hearing." In the first step, the trial court conducts an informal inquiry, known as a "competency inquiry," to determine "whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *See* Act of May 14, 2003, 78th Leg., R.S., ch. 35, § 1, 2003 Tex. Gen. Laws 35 (amended 2011) (current version at Tex. Code Crim. Proc. Ann. art. 46B.004 (West Supp. 2011)).[2] If the trial court determines that such evidence exists, the court proceeds to the second step, at which time the court must order a psychological examination to determine whether the defendant is competent to stand trial. *See* Tex. Code Crim. Proc. Ann. arts. 46B.005(a), 46B.021. In addition, the court generally must conduct a formal trial, known as a "competency hearing," in which a factfinder determines "whether the defendant is incompetent to stand trial on the merits." *See id.* arts. 46B.005(b), 46B.051; *see also Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009) (describing difference between informal competency inquiry and formal competency hearing), *superseded by statute*, Tex. Code Crim. Proc. Ann. art. 46B.004(c-1).

---

[2] Article 46B.004 of the Texas Code of Criminal Procedure was amended in 2011 to include subsection (c-1). However, this amendment only applies to cases in which "a motion suggesting a defendant's incompetency" was made on or after September 1, 2011. *See* Act of Aug. 31, 2011, 82d Leg., R.S., ch. 822, § 21(b), 2011 Tex. Gen. Laws 822. Given that these proceedings occurred in 2010, the previous, unamended version of article 46B.004 applies. *See* Act of May 14, 2003, 78th Leg., R.S., ch. 35, § 1, 2003 Tex. Gen. Laws 35 (amended 2011) (current version at Tex. Code Crim. Proc. Ann. art. 46B.004 (West Supp. 2011)).

At the time of these proceedings, the trial court was required to conduct a competency inquiry if the evidence was sufficient to raise a *bona fide* doubt in the court's mind about the defendant's competency to stand trial. *See Montoya*, 291 S.W.3d at 425 (concluding that *bona fide* doubt standard applies to competency inquiry).[3] Similarly, the trial court was required to conduct a competency hearing if, after the competency inquiry, the trial court had a *bona fide* doubt about the defendant's competency. *See id.* at 424–25; *see also Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). In his brief, Iniquez mistakenly uses the terms competency inquiry and competency hearing interchangeably, making it unclear whether Iniquez is challenging the trial court's failure to conduct a competency inquiry or a competency hearing. However, to the extent that Iniquez separately argues that the court should have conducted either an inquiry or a hearing, the ultimate issue is the same—was the evidence sufficient to raise a *bona fide* doubt in the trial court's mind about Iniquez's competency to stand trial? *See Montoya*, 291 S.W.3d at 424–25. Therefore, for simplicity's sake, we take Iniquez's argument to mean that the trial court erred in failing to conduct a competency hearing.

A *bona fide* doubt exists if there is more than a scintilla of evidence to support a finding that the defendant is incompetent. *See Moore*, 999 S.W.2d at 393. In determining whether there is more than a scintilla of evidence, the court "should consider only the evidence tending to show incompetency, and not evidence showing competency." *Id.* We review the trial court's

---

[3] The Legislature's amendment to article 46B.004, *see supra* note 2, effectively supercedes *Montoya v. State* and makes a "suggestion of incompetency"—not a trial court's *bona fide* doubt—the threshold requirement for conducting a competency inquiry. However, at the time of these proceedings, this amendment had not taken effect, and thus the court of criminal appeals's ruling in *Montoya* is still controlling in this case. *See* 291 S.W.3d at 425.

determination about whether a *bona fide* doubt exists for an abuse of discretion. *Montoya*, 291 S.W.3d at 425. Because the trial court is able to observe the behavior of a defendant in person, it is "in a better position to determine whether [the defendant is] presently competent." *Id.* Therefore, we do not substitute our judgment for that of the trial court, and will only reverse the trial court if its decision was arbitrary or unreasonable. *Id.*

Iniquez asserts that the results of his examinations, coupled with his erratic behavior during the assault, should have led the court to conduct a competency hearing *sua sponte*.[4] Iniquez emphasizes that both Dr. Coons and Dr. Humes diagnosed him with memory loss which makes him unable to recall the events surrounding the assault. Iniquez claims that his amnesia prevents him from effectively consulting with his attorney because he cannot recall the events surrounding his attack on Davis or his state of mind during the assault. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(a)(1). We disagree that evidence of amnesia automatically raises a *bona fide* doubt about Iniquez's competency to stand trial.

"[A] defendant's [inability to recall the event charged] is akin to 'missing' evidence," which does not give rise to a finding of incompetence. *Morris v. State*, 301 S.W.3d 281, 292–93 (Tex. Crim. App. 2009) (citing *Morrow v. State*, 443 A.2d 108, 112–13 (Md. 1982)). Accordingly, the court of criminal appeals has held that amnesia does not *per se* render a defendant incompetent

_____

[4] The fact that the trial court ordered two competency examinations is not evidence that there is a *bona fide* doubt about Iniquez's competency. *See Johnson v. State*, 564 S.W.2d 707, 711 (Tex. Crim. App. 1977) (op. on reh'g) ("[T]he fact that psychological examinations were ordered does not constitute a determination that an issue as to the defendant's competency exists."). A trial court may, in its discretion, order a competency examination based solely "on a suggestion that a defendant may be incompetent" without making a separate determination that the examination is mandatory under article 46B.005(a). *See* Tex. Code Crim. Proc. Ann. arts. 46B.005(a), 46B.021(a).

to stand trial.  *See id.*  292–94.  In fact, the *Morris* court noted that there is no case on record, in this or any other jurisdiction, in which a court has held that a defendant's amnesia renders him incompetent to stand trial.  *Id.* (quoting *Jackson v. State*, 548 S.W.2d 685, 691 (Tex. Crim. App. 1977)).  Rather, as the court of criminal appeals has theorized, the only instance in which amnesia could potentially constitute incompetence would be the "extraordinary situation . . . where the amnesia compromises the defendant's ability to think rationally."  *Gonzales v. State*, 313 S.W.3d 840, 842 (Tex. Crim. App. 2010).  Given that amnesia rarely, if ever, renders a defendant incompetent, evidence of a defendant's amnesia will not raise a *bona fide* doubt about competency unless it indicates that the amnesia compromises the defendant's ability to think rationally at the time of trial.  *See id.*

Here, Iniquez's competency examinations make it clear that, despite his memory loss, he was able to think rationally at the time of trial.  Dr. Coons stated in his report that:

> [Iniquez] rationally understands the charges and potential consequences of the pending proceedings; can disclose to counsel pertinent facts, events, and states of mind; can engage in a reasoned choice of legal strategies; can understand the adversarial nature of the proceedings; can exhibit appropriate courtroom behavior; can testify; and has the capacity to engage with counsel.

Likewise, Dr. Humes stated in his report that:

> [Iniquez] clearly suffered a closed head injury that likely resulted in the amnesia, but currently there are no other cognitive deficits that would cause him to be unable to participate fully in his own defense. Therefore, it is my opinion as a clinical psychologist that Mr. Francisco Iniquez is currently competent to stand trial.

7

Conversely, there is no evidence that Iniquez's amnesia prevented him from thinking rationally. Therefore, we find that Iniquez's amnesia did not raise a *bona fide* doubt about his competency to stand trial. *See id.*[5]

We next turn to Iniquez's claim that his behavior during the initial assault and his alleged diagnosis of post-traumatic stress disorder raised a *bona fide* doubt about his competency to stand trial. Iniquez asserts that his behavior on the day of the assault, including his yelling at cars and attacking a stranger, is evidence that he is incompetent because it indicates an underlying mental illness. We recognize that "[a] *bona fide* doubt may exist if the defendant . . . has a recent history of severe mental illness." *See Montoya*, 291 S.W.3d at 424. However, such evidence of past mental impairment is only sufficient to raise a *bona fide* doubt about competency if the evidence indicates that the defendant is presently "incapable of consulting with counsel or understanding the proceedings against him." *See Moore*, 999 S.W.2d at 395–96 (holding that evidence of mental impairment alone does not mandate competency hearing).

In this case, there is no evidence that Iniquez's alleged mental illness prevented him from effectively communicating with counsel or understanding the proceedings against him. Iniquez did not exhibit bizarre behavior at any time during these proceedings, other than on the day of the assault. Mere unusual behavior during the commission of a crime, standing alone, does not generally create a *bona fide* doubt as to a defendant's competency. *See Montoya*, 291 S.W.3d at

---

[5] Iniquez asserts that his amnesia should be evaluated differently because it was caused by brain injury rather than by intoxication. However, this distinction is irrelevant, as the court of criminal appeals has treated amnesia caused by brain injury under the same standard as general memory loss. *See Morris*, 301 S.W.3d at 287 (noting amnesia caused by traumatic brain injury).

425–26 (noting that competency concerns *present* ability to participate); *see also Wright v. State*, No. 05-02-01354-CR, 2003 Tex. App. LEXIS 5600, at \*3 (Tex. App.—Dallas July 2, 2003, no pet.) (mem. op., not designated for publication) ("[I]f the 'nature of the offense' warranted a competency hearing, then every defendant accused of aggravated sexual assault of a child would automatically be entitled to a competency hearing."). Similarly, there is no evidence to suggest that Iniquez's self-reported post-traumatic stress disorder interfered with his ability to communicate with counsel or understand the proceedings against him.[6] *See Moore*, 999 S.W.2d at 395–96.

Iniquez did not request a competency hearing, nor did he present the trial court with any evidence of incompetency, such as the opinion of another mental-health professional or an affidavit from counsel that Iniquez could not effectively communicate. Given the evidence presented, the trial court could reasonably have concluded that it did not have a *bona fide* doubt about Iniquez's competency to stand trial. *See Montoya*, 291 S.W.3d at 425–26. Therefore, we conclude that the trial court did not abuse its discretion in failing to *sua sponte* conduct a competency hearing. *See id.* Iniquez's first point of error is overruled.

***Exclusion of expert testimony***

In his second point of error, Iniquez asserts that the trial court erred in excluding expert psychological testimony. After the State rested, Iniquez informed the trial court that he intended to call Dr. Humes, the psychologist who performed Iniquez's second competency examination.

---

[6] Dr. Humes noted that "it is not clear whether [Iniquez] has a serious mental disorder other than substance abuse," and concluded that any potential mental disorder did not impair Iniquez's competency.

9

Iniquez stated that Dr. Humes would testify that, as a result of his mental defects, Iniquez was incapable of forming the necessary mens rea to commit an assault, thus negating one of the elements of the crime. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West 2011) (stating that defendant must "intentionally, knowingly, or recklessly" cause bodily injury to commit assault). The trial court refused to admit Dr. Humes's testimony, finding that the testimony was irrelevant to the issue of mens rea and that it could mislead the jury. *See* Tex. R. Evid. 402, 403.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence more likely than it would be without the evidence. Tex. R. Evid. 401. Evidence that is relevant is generally admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See* Tex. R. Evid. 402, 403. "It is important, when determining whether evidence is relevant, that courts examine the purpose for which the evidence is being introduced." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing *Moreno v. State*, 858 S.W.2d 453 (Tex. Crim. App. 1993)). We review a trial court's determination on the admissibility of evidence for an abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). Therefore, in order to determine whether the trial court abused its discretion in excluding Dr. Humes's testimony, we must consider the logical connection between his proposed testimony about Iniquez's mental state and the ultimate question of mens rea.

As the court of criminal appeals explained in *Ruffin v. State*, "both physical and mental diseases or defects may affect a person's perception of the world" in a manner that could negate mens rea. 270 S.W.3d 586, 593–94 (Tex. Crim. App. 2008). In *Ruffin*, the defendant shot

10

at approaching police officers because, due to his delusional state, he believed the officers were Muslims who were "waiting to kill [him] with a knife." *Id.* at 590. The court concluded that the defendant's mistaken perception, caused by a mental defect, was relevant to mens rea because it proved that he did not intend to shoot at *police officers*. *Id.* at 594; *see also* Tex. Penal Code Ann. § 22.02(b)(2)(B) (enhancing punishment for aggravated assault if assailant intentionally attacked public servant in discharge of duties). However, the court emphasized that the defendant was still guilty of aggravated assault because he intended to shoot at a person, but simply did not appreciate that the person he was shooting at was a police officer. *Ruffin*, 270 S.W.3d at 594.[7]

Iniquez fails to make a logical connection between the facts in his competency report, which would have formed the basis for Dr. Humes's testimony, and the issue of his ability to form the appropriate mens rea at the time of the assault. As the trial court correctly stated, Iniquez's amnesia was caused by his head injury, which occurred after the assault had already taken place, and thus could not be relevant to Iniquez's intent at the time of the assault. Furthermore, given that Iniquez could not relay any of the events surrounding the assault to Dr. Humes, Dr. Humes could not provide any insight into Iniquez's state of mind at the time of the assault.

Iniquez argues that the competency report mentions his post-traumatic stress disorder, which could be relevant to his mens rea at the time of the assault. However, as the trial court correctly stated, the report only noted that Iniquez told Dr. Humes that he had post-traumatic

---

[7] The court in *Ruffin* also thoroughly explained the distinction between a mental defect that negates mens rea and the separate and distinct affirmative defense of insanity. *See* 270 S.W.3d at 592–94. In this case, there is no assertion by either party that Iniquez was insane at the time of the assault. Therefore, the testimony of his examining psychologist could only be relevant to Iniquez's ability to form the necessary mens rea for assault. *See* Tex. Penal Code § 22.01(a)(1).

11

stress disorder. There is nothing to suggest that Dr. Humes himself confirmed this diagnosis or that it was relevant to Iniquez's intent at the time of the assault. Therefore, all Dr. Humes could testify to was that Iniquez told him that he had post-traumatic stress disorder. This evidence, standing alone, is irrelevant to Iniquez's ability to form the necessary mens rea, or alternatively, is of such limited probative value that its relevance is substantially outweighed by its potential to mislead the jury. *See* Tex. R. Evid. 403. Thus, we conclude that the trial court did not abuse its discretion in excluding Dr. Humes's testimony as irrelevant and misleading. Iniquez's second point of error is overruled.

## CONCLUSION

We affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: July 6, 2012

Publish