

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00243-CR

CHRISTOPHER L. SMITH                                APPELLANT

V.

THE STATE OF TEXAS                                       STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Christopher L. Smith appeals his convictions on two counts of sexual assault, contending that the trial court erred by not calling a jury to decide whether he was competent to stand trial. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts and Procedural History**

Sandra Carter[2] tended bar and waited tables in a Fort Worth nightclub. After she had finished her shift and walked into the parking lot late one night, she saw Appellant standing by her car. He told her she was pretty and asked her for a ride to his apartment. He said he was a good guy who had retired from the military, and he explained that he lived only a short drive away and that he needed a ride because his nephew had taken his car. She thought he seemed nice and since his apartment was close to the gas station where she was going to fill up, she agreed.

After Sandra had pulled into his apartment complex, he told her to park. When she replied that she was just dropping him off and did not need to park, he looked angry and ordered her out of the car. They both got out and he walked behind her, directing her upstairs to his apartment. Once they were inside, he disrobed her and sexually assaulted her.

Sandra convinced Appellant that she would spend the night with him if he let her take a shower first. As he ran water in the bath, she ran out the front door, completely naked. She found a gentleman walking in the complex, and he and another couple took her into an apartment, where they clothed her and tried to comfort her. When she had calmed down somewhat, they all walked out together and saw Appellant driving Sandra's car. She called 911, and the police promptly arrived and arrested him.

---

[2]This is a pseudonym.

A grand jury indicted Appellant on multiple counts of sexual assault and the trial court appointed counsel (Counsel). Attached to Appellant's application for a court-appointed lawyer is an affidavit stating that Appellant is unemployed and listing the reason for his unemployment as "disabled—MHMR." The affidavit also notes that Appellant lives with his sister and receives disability benefits for "MHMR."

A magistrate ordered the county mental health department to assess whether Appellant had a mental illness or mental retardation and whether there was clinical evidence to support a belief that he may have been incompetent to stand trial. Within a week of the order, a psychiatrist evaluated Appellant, and the forensic unit of the mental health department filed its written assessment with the trial court, reporting that although he had "adjustment disorder," which is a mental illness, Appellant was not mentally retarded nor was there clinical evidence to support a belief that he was incompetent to stand trial or needed to undergo a complete competency examination.

The next month, the trial court granted a motion filed by Counsel to have a psychiatrist examine Appellant to determine whether he was competent to stand trial. Dr. Jim Womack interviewed Appellant for an hour, discussed the case with Counsel, and reviewed documents including Appellant's mental health records from the jail.

Dr. Womack's results were inconclusive: his written report submitted to the trial court states that "due to a questionable mix of unlikely symptom severity, relative recall problems, and [Appellant's] history of receiving medication for a

3

psychotic condition," it was unclear whether Appellant was competent. Dr. Womack recommended that the trial court consider Appellant incompetent for the time being, pending further examination to rule out the possibility that he was malingering.[3]

The trial court authorized further evaluation. Dr. Womack interviewed Appellant's sister, interviewed Appellant for an additional forty-five minutes, and had him complete an intelligence exam. Dr. Womack also administered two additional tests to determine whether Appellant was exerting "optimal effort."

After his second evaluation, Dr. Womack reported to the trial court that Appellant's performance on one of the effort-measuring tests "strongly support[s] the opinion he was not exerting optimal effort to do his best." Dr. Womack also noted that Appellant had "made a considerable effort" to answer test items incorrectly. Although Dr. Womack suspected that Appellant may be mildly mentally retarded, he also concluded that Appellant had exaggerated his cognitive deficiency.

On the issue of Appellant's competency, Dr. Womack reported that Appellant was competent as statutorily defined, having "a minimal, but acceptable degree of rational and factual understanding of the proceedings against him, as required by the Texas Code of Criminal Procedure."

During a pretrial hearing held before a magistrate in June 2011, Counsel advised the trial court that two psychological assessments had found Appellant

---

[3]The report states that further examination would "assist in forming a confident opinion as to [Appellant's] true deficits and/or psychotic features, and perhaps help determine what features are due to lack of effort or purposeful distortion."

competent to stand trial. Counsel also reported that he had represented Appellant for approximately six months and had during that time gone over with Appellant the psychological assessments, of which he reported that Appellant "understood everything that we've talked about." Counsel advised the trial court that he thought "the problem is that [Appellant] doesn't like what I'm telling him; therefore, it's turned into somehow now he doesn't understand it."

Counsel also stated that when he and Appellant had discussed their defensive strategy, Appellant told him that he was refusing to cooperate and would not give Counsel the names and locations of possible witnesses. Counsel advised the trial court, "He's told me he's not going to sign any paperwork. He's also not going to testify. He's not going to do anything in this case is what I've been told, so that's what [sic] we're here today."

The trial court at that point engaged Appellant in an extended colloquy during which Appellant remained uncooperative with both the trial court magistrate and Counsel. After the nearly twenty minute hearing, the trial court found Appellant competent to stand trial.

On the day of jury selection a week later, the trial court considered Appellant's motion for continuance. Noting that Appellant had displayed an "inclination to become upset and unruly in the courtroom," had become upset during the pretrial hearing, and had engaged in "obvious efforts to avoid trial," and considering "the whole history of this case," including the trial court's interaction with Appellant, the

trial court denied the motion, finding that it "was another attempt" by Appellant "to manipulate his trial date and the criminal justice system."

The next day, Appellant secreted a razor blade into the holding cell and cut himself with it, prompting the trial court to order another competency evaluation. Dr. Womack interviewed Appellant again—this time for thirty minutes— and also had discussions with medical staff at the jail and with the trial court judge. In his third report, Dr. Womack noted that Appellant's speech became "pressured" when Appellant complained about his lawyer but that Appellant "was easily understood." Dr. Womack further reported that "when allowed to engage in a diatribe about his attorney, [Appellant's] speech was sequential, relevant, and generally logical." He also observed that Appellant made unsolicited comments that suggested he understood more than he professed. For example, he remembered being in court when the jury was "picked," and understood that was what was happening at the time, which was established when he was asked if he had been found "guilty," and he replied by saying, "No, they just picked the jury." Dr. Womack concluded that nothing in Appellant's current presentation altered his earlier opinion that Appellant was competent to stand trial.

When trial resumed, Appellant specifically invoked his right to call witnesses, and he also addressed the trial court as follows:

> THE DEFENDANT: Ma'am, I have — this is the problem I'm having with Officer Willett — I mean, with Attorney Willet [(Counsel)]. I have a problem. I know I do mentally. But I'm not as stupid as he thinks I am. Okay?

6

I know when—I know when something is not right. Okay?

Now, he was trying to limit me to only one witness, which was Sonja Jacobs, limit me to one witness. Then he tells us that due to the aggravated sexual assault case, he come back and tells us that the DA says that the girl is out of the state. Well, we had — we had our own investigation and our own investigators who found out that the girl is not out of the state, that the reason he moved on to the next case[4] was because I had a substantial amount of witnesses that would have been — that would have been in my favor on that case. So they jumped to another case, and —which was only leaving me one witness and limit my witness, and then had you stricken the witnesses that I needed. I still have two witnesses, two witnesses that he has not even subpoenaed that can place this girl at my apartment at two different times, at two different—I have three people that can place her—

At that point, the trial court interrupted Appellant to counsel him against

discussing trial strategies on the record in front of the prosecution, but Appellant

continued:

THE DEFENDANT: They're going to find out anyway because I feel that he's working with them. That's the whole problem that I have. I mean, that's the whole problem that I have. I wish you would just—I just—I know I don't have to have on these.[5] I know how to act on trial. I wish you would just give me another attorney, an attorney that cares about me. Okay? Cares about this case.

I didn't do this, and I want to testify. I know I'm going to testify, okay, because I have a right to testify because I —because it's a lot of things that's not going to get put in the court if I leave it up to [Counsel]. It's not going to get put in front of the jury, and it's not going to come out. You know what I'm saying? I know this, and he knows this. Okay? It shouldn't have to go—be like this, Judge. It shouldn't have to be like this.

---

[4]Appellant had multiple cases pending.

[5]Because earlier Appellant had threatened Counsel, he had been handcuffed and shackled.

7

. . . . .

The Court ordered an investigator. I mean, literally, this investigator was paid to—to pass out three subpoenas, because that's all he did. He didn't find any witnesses. He didn't do anything. He didn't find anything that I sit there and talk to him about and [Counsel] about. Nothing was done. He sits there and tells me yesterday, "I called him, but I couldn't get him to call me back." Come on. How can you not get a court-ordered investigator online with his attorney who hired him? I mean, do you—I mean, can't you see why I'm upset? That is why I'm upset.

THE COURT: I understand why you're upset.

THE DEFENDANT: A juror stood up—a juror stood up and said, "You know what, sir, [Counsel], I'm a little confused because the vibe I'm getting from you is that he's already guilty." I mean, come on. If they can see this, how do you expect I'm supposed to feel? A juror—that's what the jury said. . . . Come on. It's not right. I just want a fair trial. That's all. If I'm found guilty, okay, fine, but I want a fair trial because I didn't do this.

The State then proceeded with its case and rested, after which the defense presented four witnesses before resting.[6] The jury convicted on two counts, and the trial court sentenced Appellant to life in prison.

**Discussion**

Appellant contends that the trial court abused its discretion by disregarding the statutory procedures for determining competency and by not assembling a jury to determine whether he was competent to stand trial. He argues that the trial court should have conducted a jury trial on the issue because evidence raised a bona fide doubt that he was competent. He also contends that the trial court further erred by

---

[6]After consulting with Counsel, Appellant elected not to testify.

8

disregarding the procedures in chapter 46B of the code of criminal procedure by entering an informal finding of competency without a trial and by soliciting testimony confirming his competence to stand trial.

The conviction of an accused person while he is legally incompetent to stand trial violates due process. *See McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003). A defendant is incompetent to stand trial if he does not have a "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2006). A defendant is presumed to be competent to stand trial, and incompetence must be established by a preponderance of the evidence. *Id.* at art. 46B.003(b).

The standard of review is whether the trial court abused its discretion by failing to empanel a jury for the purpose of conducting a competency hearing. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216 (2000); *Lawrence v. State,* 169 S.W.3d 319, 322 (Tex. App.—Fort Worth 2005, pet. ref'd).

Contrary to Appellant's position, a jury trial is not required when evidence raises a bona fide doubt that a defendant is competent. When there is evidence that is sufficient to raise a bona fide doubt as to a defendant's competency, a trial court shall first conduct an *informal inquiry* to ascertain whether there is evidence that would support a finding of incompetence. Tex. Code Crim. Proc. Ann. art.

9

46B.004(c) (West Supp. 2012); *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009).

If an informal inquiry shows that evidence exists that would support a finding of incompetence, the trial court shall then order an examination to determine whether the defendant is incompetent to stand trial. Tex. Code Crim. Proc. Ann. art. 46B.005(a) (West 2006).

Only after such an examination, if the trial court still has a bona fide doubt about the defendant's competency, need the trial court conduct a formal hearing on the issue. *See Montoya*, 291 S.W.3d at 424–25; *Moore*, 999 S.W.2d at 393. And the formal hearing need not be conducted before a jury unless a party requests it or the trial court determines on its own motion to conduct the hearing before a jury. Tex. Code Crim. Proc. Ann. art. 46B.051 (West 2006).

Neither party in this case requested a jury trial on the issue of competency. To the extent that Appellant claims the trial court erred by not granting him a jury trial to determine whether he was competent to stand trial, that part of his claim is overruled. *See id*.

The State argues that the trial court followed proper statutory procedure because it made several informal inquires into Appellant's competency. The State points to the trial court's ordering an evaluation by the county mental health department; Dr. Womack's initial examination with follow-up testing and evaluation, which the trial court ordered in response to Appellant's motion; the pretrial hearing during which Appellant's counsel advised the trial court that he believed Appellant

was competent; and the trial court's ordering Dr. Womack to conduct yet another evaluation of Appellant after he had cut himself with a smuggled razor blade. We agree with the State.

Each of these informal inquires showed that Appellant was competent to stand trial. First, the county mental health department found him competent. Second, although Dr. Womack's initial examination was inconclusive and prompted him to recommend that the trial court consider Appellant incompetent until he could rule out malingering, his further examination showed that Appellant was malingering and convinced Dr. Womack that although Appellant had certain mental health issues, those issues did not render him incompetent to stand trial. Third, Counsel, who had worked with Appellant for approximately six months and had discussed strategies with him, told the trial court that he thought Appellant was competent. Fourth, when the trial court asked Dr. Womack after evaluating Appellant for the third time if anything had changed his opinion that Appellant was competent, Dr. Womack replied that nothing he had seen had changed his mind.

These expert conclusions together with Appellant's own arguments and statements in court did not create a bona fide doubt as to his ability to consult with Counsel with a reasonable degree of rational understanding or as to his rational or factual understanding of the proceedings against him. *See Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1105 (2009).

Moreover, Appellant's own statements to the trial court confirmed that he understood the trial process and that he had his own trial strategy. His argument at

11

trial was not that he did not understand the process but that Counsel would not pursue the case as Appellant thought best. Appellant expressly stated "I'm not as stupid as he [Counsel] thinks I am." It was within the zone of reasonable disagreement for the trial court to conclude from this that Appellant was competent to stand trial.

## Conclusion

Based upon these facts in the record, we hold that the trial court followed the proper statutory procedures set out for determining competency to stand trial and did not abuse its discretion by finding that Appellant was competent. No error being shown, Appellant's point is overruled and the judgment is affirmed. *See Montoya*, 291 S.W.3d at 425; *Iniquez v. State*, —S.W.3d—, No. 03-11-00333-CR, 2012 WL 2742632, at *5 (Tex. App.—Austin July 6, 2012, pet. ref'd).

PER CURIAM

PANEL: GABRIEL, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 23, 2012