# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00549-CR

**Eric Hageman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-12-301121, HONORABLE JULIE KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Eric Hageman guilty of robbery, a second-degree felony. *See* Tex. Penal Code § 29.02. After finding that Hageman had previously been convicted of a felony, the jury assessed punishment at 40 years' imprisonment, and the trial court rendered judgment on the jury's verdict. *See id.* § 12.42(b). In his sole point of error on appeal, Hageman contends that the trial court abused its discretion by failing to conduct a sua sponte informal inquiry into Hageman's competency to stand trial. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Hageman was indicted for an offense allegedly occurring on May 27, 2012. On August 22, 2012, Hageman's trial counsel filed a motion to have Hageman examined for competency. The trial court granted the motion and ordered Dr. Harold Scott to examine Hageman. According

to a later report contained in the record, Dr. Scott found Hageman competent.[1]  On October 4, trial counsel filed a second motion to have Hageman examined for competency, which the trial court also granted.  The court ordered Dr. David Landers to examine Hageman.  Dr. Landers opined that Hageman was not competent to stand trial but also opined that there was "a substantial probability that [Hageman could] be restored to competency in the reasonably foreseeable future."  On October 23, the trial court signed an agreed order declaring Hageman incompetent to stand trial and committing him to a mental health facility.

The record indicates that the head of the mental health facility to which Hageman had been committed submitted a report to the trial court concluding that Hageman had been restored to competency.  On January 29, 2013, Hageman and the State each waived any objections to that competency report, and the trial court signed a judgment declaring Hageman competent to stand trial based on the report.  Hageman's trial took place on July 16–17, 2013.  Hageman was found guilty of robbery, and this appeal followed.

## DISCUSSION

### Statutory scheme and standard of review

The conviction of an accused person while the person is legally incompetent to stand trial violates due process.  *Iniquez v. State*, 374 S.W.3d 611, 614 (Tex. App.—Austin 2012, no pet.).

---

[1]  The State's brief indicates that Dr. Scott found Hageman competent and that a copy of his report was contained in a supplemental record mailed to this Court in February 2014.  We can find no indication that this Court ever requested or received a supplemental record in this case.  However, the record does contain Dr. David Landers's report, which states that Dr. Scott found Hageman competent in August 2012.

Generally, a defendant is presumed to be competent. *See* Tex. Code Crim. Proc. art. 46B.003(b). However, a person is incompetent to stand trial if the person does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against the person." *Id.* art. 46B.003(a). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(b).

Furthermore, "[o]n suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c) A representation from any credible source that the defendant may be incompetent triggers the requirement for an informal inquiry, and the court is not required to have a bona fide doubt about the defendant's competency before conducting an inquiry. *Id.* art. 46B.004(c-1). Moreover, "[e]vidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003." *Id.* Finally, "[i]f after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination under Subchapter B to determine whether the defendant is incompetent to stand trial in a criminal case." *Id.* art. 46B.005(a).

We review a trial court's decision not to conduct an informal competency inquiry for abuse of discretion. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009),

3

*superseded by statute on other grounds as stated in Turner v. State*, 422 S.W.3d 676, 692 & n.31

(Tex. Crim. App. 2013); *Jones v. State,* No. 03-12-00286-CR, 2014 WL 1018072, at *1 (Tex.

App.—Austin Mar. 11, 2014, no pet.) (mem. op., not designated for publication). Under that standard,

we will uphold the trial court's decision as long as it is within the zone of reasonable disagreement.

*See Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).

*Analysis*

In his sole point of error, Hageman contends that the trial court abused its discretion

by failing to conduct a sua sponte informal inquiry into his competency. Hageman argues that his

conduct shortly before and during trial showed that he was unable to consult with his trial counsel

with a reasonable degree of rational understanding, that his conduct displayed his lack of

understanding of the charge against him and demonstrated an inability to engage in a reasoned

choice of legal strategies, and that his bizarre courtroom behavior further revealed that he was

incompetent. Hageman contends that the following evidence demonstrated that he was not competent

to stand trial:

- Hageman repeatedly refused to speak with trial counsel about his case. At a pretrial hearing, Hageman stated that he would talk to trial counsel only if counsel brought him "good stuff."

- Hageman demonstrated his inability to make rational decisions about his case by jettisoning his best defense: insanity at the time of the offense. Because Hageman insisted that he was factually innocent, trial counsel could not pursue an insanity defense.[2]

---

[2] Hageman's trial counsel filed a motion to have Hageman examined for sanity at the time of the offense and gave notice of an insanity defense on February 6, 2013. The trial court granted

4

- Hageman displayed a lack of understanding of the charge against him by filing a pro se motion in which he stated that he was charged with "Robbery by Simple Assault," while he was actually indicted for "Robbery—Bodily Injury."

- Hageman persisted in asking to be sent to a halfway house even after it was explained to him that probation was not an option.

- Just four days before trial, Hageman appeared unable to understand that his alleged offense was a second-degree felony that had been enhanced to a first-degree penalty range.

- Although Hageman elected to have the jury assess punishment, after the jury found him guilty, Hageman asked for the trial court to assess punishment and seemed not to understand his previous election.

- Hageman apparently pointed his finger at witnesses, for which the trial court admonished him on the record.

- Hageman stated on the record that he did not like the trial court judge.

- Hageman repeatedly insulted his trial counsel in the courtroom.

- Hageman apparently talked out loud during trial proceedings. When the trial court confirmed that it could hear his words, Hageman stated that he was not capable of whispering. Hageman then refused to communicate with trial counsel by passing handwritten notes.

- Hageman used vulgar language in the courtroom after being told not to do so.

---

the motion, but the record does not indicate whether the court appointed an expert to perform the examination at that time. On March 25, trial counsel again filed a motion to have Hageman examined for sanity at the time of the offense. The trial court again granted the motion, this time ordering a Dr. Burrows to examine Hageman. Although the record does not contain a report from this examination, at Hageman's arraignment, the prosecutor informed the trial court that a Dr. Coons had conducted the examination and had opined that Hageman was sane at the time of the offense. Hageman's trial counsel later filed a pleading on July 15, 2013, explaining that he would no longer pursue an insanity defense because "Defendant has been found to be competent" and "Defendant has informed Counsel that he is factually not guilty of the charges."

•  At the end of the trial, when the court asked if there was any reason why it should not pronounce sentence, Hageman stated, "I didn't do the crime so I shouldn't do the time. Everyone is going to pay for this shit, and that's—" After the court warned Hageman that Hageman's words could be construed as a threat, which would be another crime, Hageman responded, "Well, God will do it to them."

We begin our analysis by noting that Hageman had been formally examined and found competent before trial began. As previously explained, Hageman was committed for competency restoration treatment. Following that treatment, the trial court signed a judgment restoring Hageman's competency. This judgment is accompanied by a waiver of any objections Hageman may have had to the facility's competency report. The waiver states, in part, that Hageman "requests that the court make a determination that the Defendant is now mentally competent to stand trial."[3]

Because Hageman was formally examined and found competent, we will conclude that the trial court abused its discretion by failing to conduct an additional competency inquiry only if there was evidence suggesting that Hageman's condition had deteriorated after the trial court's initial finding of competency. *See Turner*, 422 S.W.3d at 693 ("Should the formal competency trial result in a finding of competency, the trial court is not obliged to revisit the issue later absent a material change of circumstances suggesting that the defendant's mental status has deteriorated.");

---

[3] On July 2, 2013, after Hageman's competency had been restored, his trial counsel filed another motion to have Hageman examined for competency to stand trial. The trial court granted this motion and ordered "Dr. Coons/Burrows" to examine Hageman. Although the record does not contain a report from this examination, the trial court stated on the record just before sentencing Hageman that he had been found competent by a psychiatrist on July 5. In addition, when Dr. Landers testified to Hageman's history of mental illness during the sentencing phase of trial, the prosecutor asked the court to take judicial notice that Hageman was found competent to stand trial. Hageman's attorney agreed, and the trial court did take judicial notice.

*Guillen v. State*, No. 13-12-00635-CR, 2014 WL 803729, at *9 (Tex. App.—Corpus Christi Feb. 27, 2014, no pet.) (mem. op., not designated for publication) ("Once the jury determined that appellant was competent to stand trial, to justify a second competency trial, appellant had the burden of presenting evidence of a change in his mental condition since the first competency trial.") (collecting cases); *Claxton v. State*, No. 02-13-00403-CR, 2014 WL 584922, at *3 (Tex. App.—Fort Worth Feb. 13, 2014, no pet.) (mem. op., not designated for publication) ("Nothing in the record before the trial court at the punishment hearing suggested that Appellant's mental status had materially changed in the five months after its prior competency determination such that a sua sponte, informal competency hearing was required."); *Learning v. State*, 227 S.W.3d 245, 250 (Tex. App.—San Antonio 2007, no pet.) ("To justify a second competency hearing, defense counsel would have had to offer new evidence of a change in Learning's mental condition since the first competency hearing.").

While the record indicates that Hageman was not always cooperative or respectful to his trial counsel and that he sometimes spoke aloud or used profanity in the courtroom, these behaviors could have been the result of obstinacy instead of mental illness. *See Turner*, 422 S.W.3d at 696 (trial court need not conduct informal competency hearing when "there is some evidence that the defendant obstinately refuses to cooperate with counsel but nothing from which to rationally infer that his obstinacy is fueled by mental illness"); *Lopez v. State*, No. 04-12-00568-CR, 2013 WL 6533183, at *7 (Tex. App.—San Antonio Dec. 11, 2013, no pet.) (mem. op., not designated for publication) ("[W]hile there is evidence that Lopez refused to cooperate with his attorney . . . and sometimes interrupted the proceedings by speaking out loud, and sometimes failed to follow

instructions, nothing in the record supports a rational inference that his conduct . . . was a product of mental illness rather than mere obstinacy.") (internal quotation marks omitted); *White v. State*, No. 02-12-00087-CR, 2013 WL 4210827, at *8 (Tex. App.—Fort Worth Aug. 15, 2013, no pet.) (mem. op., not designated for publication) (per curiam) ("Rather, the record reflects that the witnesses and other trial participants merely found White unpleasant, particularly when he did not get what he wanted."); *DeWitt v. State*, No. 05-12-00583-CR, 2013 WL 3389055, at *2 (Tex. App.—Dallas July 3, 2013, no pet.) (mem. op., not designated for publication) ("[A] failure to consult with counsel does not demonstrate a lack of competence; instead, a defendant must be *unable* to consult with counsel.").

Similarly, the behavior that Hageman characterizes as "bizarre," such as pointing at witnesses or threatening the trial participants with retribution, does not always constitute evidence of incompetence. *See Johnson v. State*, 429 S.W.3d 13, 18 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Bizarre, obscene, or disruptive comments by a defendant during court proceedings do not necessarily constitute evidence supporting a finding of incompetency."). In addition, Hageman does not explain, and the record does not reveal, how this "bizarre" behavior represents a change in Hageman's mental condition after he was declared competent.

Moreover, "[n]either appellant's history of mental illness nor the fact that appellant may have been on psychiatric medication is sufficient to warrant a competency inquiry absent evidence of a present inability to communicate with his attorney or understand the proceedings." *Hobbs v. State*, 359 S.W.3d 919, 925 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Despite the "bizarre" behavior Hageman points to on appeal, Hageman demonstrated that he could effectively

communicate with his counsel after his competency was restored. At a pretrial hearing, Hageman's counsel described a "clear and lucid and competent discussion" he had with Hageman concerning whether Hageman should pursue an insanity defense. Hageman also demonstrated an ability to understand the charge against him and clearly articulated that he wanted to go to trial rather than accept the State's plea offer.

In light of the record before us, we conclude that Hageman did not meet his burden of showing that his conduct constituted evidence of a material change of circumstances suggesting that his status had deteriorated and that he was incompetent to stand trial. *See Turner*, 422 S.W.3d at 693; *Guillen*, 2014 WL 803729, at *9. We therefore conclude that the trial court did not abuse its discretion by failing to sua sponte conduct an informal competency inquiry. Accordingly, we overrule Hageman's sole point of error.

## CONCLUSION

Having overruled Hageman's sole point of error, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: June 5, 2015

Do Not Publish

9