

# NUMBER 13-20-00157-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DAMIEN GENE FLORES,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                            Appellee.

## On appeal from the 24th District Court of Calhoun County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva
Memorandum Opinion by Justice Silva**

Appellant Damien Gene Flores appeals his conviction of aggravated assault with a deadly weapon against a family member, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a), (b)(1). By two issues, appellant contends (1) his trial counsel was ineffective by failing to request a competency examination of Flores during trial; and

(2) the trial court erred by not *sua sponte* ordering a competency examination of Flores during trial. We affirm.

## I.　BACKGROUND

Complainant Katherine Drake testified at trial that she and Flores were in a relationship for approximately ten years and had two children together. According to Drake, on July 6, 2018, she, Flores, and their children were home when Flores began calling her names when she got home from buying breakfast. Drake explained the situation rapidly escalated to Flores throwing objects at her and then "he was on top of [her]." While on top of her, Flores covered her face with a blanket and pillow so that she could not breathe. When she tried to get Flores off her, he began hitting her in the face with his fist, and then he choked her. Flores then held a knife to her throat. At some point, Drake was able to call 9-1-1 and remained on the phone with them until officers arrived and arrested Flores. Prior to being transported to jail, Flores was taken to the hospital for complaints about something in his eye causing pain.

About six months prior to trial, the trial court ordered a competency evaluation for Flores.[1] The trial court appointed Joel Kutnick, M.D., a licensed psychiatrist, to evaluate Flores's competency. Kutnick's report indicates that he reviewed the incident report for the alleged assault, additional incident reports alleging Flores violated the emergency protective order prohibiting him from contacting Drake, discharge instructions from the hospital for Flores after his arrest, body camera footage of the arrest, and several

---

[1] It is unclear whether the trial court ordered the competency evaluation *sua sponte* or at the request of Flores's counsel or the State.

recordings of phone calls from Flores while in jail. Kutnick noted that some of the phone calls "reveal[] Flores has a rational as well as factual understanding of court proceedings[,]" while "other phone calls . . . suggest that Flores may be paranoid and delusional." Among the delusions that Flores expressed during the phone calls was the assertion that his attorney was a former high school classmate who became a United States Marshal or Texas Ranger and was under cover as his attorney.[2] Other phone calls included Flores telling his mother that he believed somebody put something in his eye after he was drugged and kidnapped.

Other phone calls demonstrated Flores discussing the charges against him and the underlying facts. For example, in one phone call Flores expressed concern about his charge including deadly weapon language. Flores claimed he did not use the knife, rather it was in his pocket, therefore, he did not understand why there was an enhancement to his charge. In another conversation, he explained to his mother that he was offered fifteen years for a guilty plea. Finally, Flores had multiple conversations with individuals about getting out on bond, the lack of pretrial hearings, and reviewing discovery with his attorney.

Kutnick also spoke with Flores's trial counsel, who expressed that Flores needed the competency evaluation "because Flores told him there was something in his left eye" and "he could easily lift some of the tissue which was on his eye." Flores had further

---

[2] Flores was appointed two different attorneys prior to trial. Initially, Flores was represented by Jerry Clark, who withdrew as counsel. Thereafter, James Smith was appointed to represent Flores and did so through trial. Kutnick noted that "[i]t [was] unclear if he thinks James Smith is the U.S. Marshal[] or if it was his former attorney, Jerry Clark." However, the case summary included in the clerk's record demonstrates that Smith was Flores's attorney at the time of those phone calls. In other calls, Kutnick noted that Flores stated, "Mr. Smith looks like he is legit."

explained to his counsel that "there was a radio or something in his cell where he could hear voices."

Kutnick briefly interviewed Flores, who expressed that he did not understand why he had been scheduled for the evaluation and did not believe he needed it. Flores was able to express to Kutnick that he was in jail for aggravated assault with a deadly weapon and facing five to ninety-nine years in prison but was going to have a trial. Flores stated his attorney did not tell him about the evaluation, so he did not want to participate further until he spoke with his attorney. Kutnick noted that during the conversation Flores "was logical and coherent[,] [h]is associations [were] good[,]" and "[h]e was calm." However, Kutnick noted that Flores "was quite suspicious about why this evaluation was taking place," and "[h]e certainly appeared to know his legal rights that he did not have to participate in the interview." Flores refused to interview with Kutnick any further.

Kutnick spoke with jail staff who described Flores as "able to carry on a coherent conversation" but noted that "[h]e does have a bad temper and does not like to be corrected." Kutnick attempted to speak with Flores's mother and brother; however, they were hesitant to speak with Kutnick. Flores's mother did express that Flores "ha[d] become very paranoid."

Kutnick provisionally diagnosed Flores with amphetamine use disorder and delusional disorder but concluded that it was difficult to make an exact diagnosis due to Flores's refusal to participate in the psychiatric evaluation. Kutnick ultimately concluded that Flores was competent to stand trial, stating:

> [T]he phone calls I listened to absolutely reveal this defendant has a rational and factual understanding of court proceedings. Even if he is delusional, it

4

does not interfere with his rational understanding of his legal situation.

The only thing which would make him incompetent is if he is delusional and paranoid about his attorney, to the point, where because of this, he [cannot] cooperate with his attorney. At this point, it appears Flores is cooperating with his present attorney. Therefore, I have concluded he is competent to stand trial. If there was evidence he was so paranoid with his present attorney which rendered him uncooperative, then I would state he is not competent to stand trial. I have no such evidence at this point to suggest his delusions are interfering with his ability to relate to this attorney.

Flores proceeded to trial, electing to have the jury determine punishment. After the State's case in chief, Flores's counsel explained to the trial court, outside the presence of the jury, that Flores intended to testify. The trial court admonished Flores that he was not required to testify and that by doing so the State would be allowed to ask him about matters that he may not wish to discuss. When asked if he understood, Flores repeatedly answered, "Yes, sir." The State notified the trial court that it intended to question Flores about a prior burglary conviction as alleged in the enhancement paragraph in the indictment. Flores further expressed that he did not have a problem with that.

Flores coherently testified regarding his history with Drake, including their alleged common law marriage, shared drug use, and their two children, as well as his burglary charge, his family, and where he had lived in the past. However, when Flores began talking about the alleged assault, he claimed that delusions affected his conduct. Flores explained:

> [Drake and the kids] were watching the movies sitting on the couch and I woke up to, I mean, it sounds completely insane but people talking to me in my ear telling me I needed to leave, [Drake] didn't want to be with me. And, you know, I couldn't get them to shut up pretty much. And they told me they were outside. So I went in and out of the house a couple times and after

5

that it was kind of a blur, you know.[3]

Flores's testimony also included claims that he is involved with MK Ultra[4] and believed that he had an implant in his eye that altered his mental state or mood. Flores introduced multiple exhibits of requests for assistance that he submitted while in jail that expressed similar claims. Several requests also included requests for information on how to contact the Department of Homeland Security, the Federal Bureau of Investigation, and the Texas Rangers.

Flores responded directly and coherently to each of his counsel's questions to him. When asked about the use of a knife in the alleged assault, the following colloquy occurred:

| [Flores's Counsel]: | Mr. Flores, are you right or left[-]handed? |
| [Flores]: | I'm right[-]handed. |
| . . . . | |
| [Flores's Counsel]: | Has there ever been a time that you can think of when you have used your knife with your left hand? |
| [Flores]: | Probably not. No, sir. |
| [Flores's Counsel]: | Did you at any time hold the knife to Katherine Drake's throat? |
| [Flores]: | No, sir. |

---

[3] Flores did not raise an insanity defense at trial and does not challenge his trial attorney's failure to do so as ineffective assistance of counsel.

[4] MK Ultra was a Central Intelligence Agency program that sought to develop mind control techniques using torture and psychedelic drugs, such as LSD. Terry Gross, *The CIA's Secret Quest for Mind Control: Torture, LSD and a 'Poisoner in Chief'*, NPR (Sept. 9, 2019, 2:50 PM) https://www.npr.org/2019/09/09/758989641/the-cias-secret-quest-for-mind-control-torture-lsd-and-a-poisoner-in-chief (last visited Sept. 28, 2021). The program operated from the 1950s to the early 1960s. *Id.*

| [Flores's Counsel]: | The knife as you know—excuse me. Was—it was in your pocket; right? |
|---|---|
| [Flores]: | Yeah. Yes, sir. |
| [Flores's Counsel]: | And is that uncommon for a knife to be in your pocket? |
| [Flores]: | No. No, sir. Not at all. |

Flores also responded directly and coherently to the State's cross-examination of him.

The jury found Flores guilty of aggravated assault with a deadly weapon. Flores pleaded true to the enhancement paragraph of the indictment. The jury sentenced Flores to twenty-five years' confinement. Flores's appellate counsel filed a motion for new trial, "contend[ing] the verdict is contrary to the law and the evidence" and does not mention Flores's competency or ineffective assistance of counsel. The motion was overruled as a matter of law and this appeal followed. *See* Tex. R. App. P. 21.8(c).

## II.    COMPETENCY

### A.    Standards of Review

#### 1.    Order for Competency Evaluation

"We review a complaint that the trial court erred in not conducting an informal competency inquiry for an abuse of discretion." *Farris v. State*, 506 S.W.3d 102, 110 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd) (citing *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute as stated in Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013)). "A trial court's first-hand factual assessment of a defendant's competency is entitled to great deference on appeal." *Id.* (citing *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004)).

7

## 2. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, an "[a]ppellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

> In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different.

*Id.* (citing *Strickland*, 466 U.S. at 687). In our review, we apply a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689)). A trial counsel's deficient performance "must be affirmatively demonstrated in the trial record; [we] must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142.

## B. Applicable Law

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PRO. ANN. art. 46B.003(b). A defendant is incompetent to stand trial if he does not have "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." *Id.* art. 46B.003(a); *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). "The fact that a defendant is mentally ill does not by itself mean

8

he is incompetent." *Turner*, 422 S.W.3d at 691.

Before a trial court may conclude that a defendant is incompetent, the court must first initiate an informal inquiry and then, if applicable, order a competency examination and conduct a formal competency trial. TEX. CODE CRIM. PRO. ANN. art. 46B.004(a), (b); *Boyett*, 545 S.W.3d at 563. "[A]ny 'suggestion' of incompetency to stand trial calls for an 'informal inquiry' to determine whether evidence exists to justify a formal competency trial." *Turner*, 422 S.W.3d at 692 (citing TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)). "A suggestion of incompetency is the threshold requirement for an informal inquiry . . . and may consist solely of a representation from any credible source that the defendant may be incompetent." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c-1). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(b).

If, during the informal inquiry, there is "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial, . . . then the trial court must order a psychiatric or psychological competency examination, and except for certain exceptions, it must hold a formal competency trial." *Boyett*, 545 S.W.3d at 563; *see* TEX. CODE CRIM. PROC. ANN. art. 46B.021 (providing that "[o]n a determination that evidence exists to support a finding of incompetency to stand trial, the court shall appoint one or more experts to" "examine the defendant and report to the court on the competency or incompetency of the defendant").

The "some evidence" standard requires a finding of "'more than none or a scintilla'

9

of evidence that 'rationally may lead to a conclusion of incompetency.'" *Boyett*, 545 S.W.3d at 564 (quoting *Turner*, 422 S.W.3d at 692). "[A] trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency." *Id.*

### III.    ANALYSIS

Flores refers to the same evidence for both points of error regarding his competency. For efficiency, we do the same. Although Flores correctly identifies the standard for competency as whether he had the "ability to consult with [his] attorney with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against [him]," *see* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a), he does not argue that he lacked either. Rather, he merely recites portions of his testimony containing delusional beliefs.

Our review of the record does not reveal any evidence that Flores lacked a rational and factual understanding of the proceedings. *See Boyett*, 545 S.W.3d at 564 (stating that the statutory "some evidence" standard requires "more than none or a scintilla of" evidence that "rationally may lead to a conclusion of incompetency"). Although Flores's testimony included delusions as to the cause of the assault, it did not demonstrate that he lacked a rational and factual understanding of the proceeding. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(2); *see also Demarsh v. State*, No. 02–15–00210–CR, 2016 WL 1267702, at *5 (Tex. App.—Fort Worth Mar. 31, 2016, no pet.) (mem. op., not designated for publication) (concluding that "rambling, grandiose, irrelevant . . . , and perhaps delusional" statements by defendant do not necessarily suggest incompetency).

10

Rather, the record demonstrates that Flores responded directly and coherently during both direct and cross examination, offered rebuttal testimony to some elements of the offense, and offered an excuse for the alleged assault. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(2). When Flores announced that he would be testifying, the trial court repeatedly asked if Flores understood his right not to testify and explained some of the potential consequences of his testimony, to which Flores repeatedly responded "Yes, sir" or "I completely understand." As such, the record demonstrates that Flores had an appropriate level of understanding of the proceeding. *See id.*

The record also does not reveal any evidence that Flores lacked "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding." *See id.* art. 46B.003(a)(1). Although Flores points to Kutnick's notation that some of Flores's phone calls indicate he "may be paranoid and delusional[,]" Kutnick ultimately concluded "[t]he only thing which would make him incompetent is if he is delusional and paranoid about his attorney, to the point, where because of this, he [cannot] cooperate with his attorney." Kutnick stated that there was no evidence demonstrating Flores's delusions were interfering with his ability to cooperate with his attorney. In fact, in one of the recordings Flores stated he thought his attorney was "legit." Neither Flores's mental illness nor his delusions alone necessitate a finding of incompetence. *See Turner*, 422 S.W.3d at 691; *see also Joseph v. State*, No. 13-11-00461-CR, 2013 WL 1461841, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 11, 2013, pet. ref'd) (mem. op., not designated for publication) ("[E]vidence of past mental impairment is only sufficient to raise a bona fide doubt about competency if the evidence indicates that the defendant is presently

11

'incapable of consulting with counsel or understanding the proceedings against him.'"

(quoting *Iniquez v. State,* 374 S.W.3d 611, 617 (Tex. App.—Austin 2012, no pet.))).

Because we find no evidence indicating that Flores was unable to "consult with [his] lawyer with a reasonable degree of rational understanding" or that he did not possess a "factual understanding of the proceedings against [him]," we conclude that Flores's trial counsel's decision not to request an additional competency evaluation did not "[fall] below an objective standard of reasonableness," and, thus, was not ineffective performance. *See Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 689). For the same reasons, we conclude the trial court did not abuse its discretion by failing to *sua sponte* order a competency examination. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.004, 46B.021; *Boyett*, 545 S.W.3d at 563. Flores's first and second issues are overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
14th day of October, 2021.

12