02-11-243-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00243-CR


 
 
 Christopher L. Smith
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

Appellant
Christopher L. Smith appeals his convictions on two counts of sexual assault, contending
that the trial court erred by not calling a jury to decide whether he was competent
to stand trial.  We affirm.

Background
Facts and Procedural History

Sandra
Carter[2] tended bar and waited
tables in a Fort Worth nightclub.  After she had finished her shift and walked
into the parking lot late one night, she saw Appellant standing by her car.  He
told her she was pretty and asked her for a ride to his apartment.  He said he was
a good guy who had retired from the military, and he explained that he lived
only a short drive away and that he needed a ride because his nephew had taken
his car.  She thought he seemed nice and since his apartment was close to the gas
station where she was going to fill up, she agreed.

After
Sandra had pulled into his apartment complex, he told her to park.  When she
replied that she was just dropping him off and did not need to park, he looked
angry and ordered her out of the car.  They both got out and he walked behind
her, directing her upstairs to his apartment.  Once they were inside, he disrobed
her and sexually assaulted her.

Sandra
convinced Appellant that she would spend the night with him if he let her take
a shower first.  As he ran water in the bath, she ran out the front door,
completely naked.  She found a gentleman walking in the complex, and he and another
couple took her into an apartment, where they clothed her and tried to comfort
her.  When she had calmed down somewhat, they all walked out together and saw
Appellant driving Sandra’s car.  She called 911, and the police promptly arrived
and arrested him.

A
grand jury indicted Appellant on multiple counts of sexual assault and the
trial court appointed counsel (Counsel).  Attached to Appellant’s application for
a court-appointed lawyer is an affidavit stating that Appellant is unemployed
and listing the reason for his unemployment as “disabled––MHMR.”  The affidavit
also notes that Appellant lives with his sister and receives disability
benefits for “MHMR.”

A
magistrate ordered the county mental health department to assess whether Appellant
had a mental illness or mental retardation and whether there was clinical
evidence to support a belief that he may have been incompetent to stand trial. 
Within a week of the order, a psychiatrist evaluated Appellant, and the
forensic unit of the mental health department filed its written assessment with
the trial court, reporting that although he had “adjustment disorder,” which is
a mental illness, Appellant was not mentally retarded nor was there clinical
evidence to support a belief that he was incompetent to stand trial or needed
to undergo a complete competency examination.

The
next month, the trial court granted a motion filed by Counsel to have a psychiatrist
examine Appellant to determine whether he was competent to stand trial.  Dr. Jim
Womack interviewed Appellant for an hour, discussed the case with Counsel, and
reviewed documents including Appellant’s mental health records from the jail.

Dr.
Womack’s results were inconclusive:  his written report submitted to the trial
court states that “due to a questionable mix of unlikely symptom severity,
relative recall problems, and [Appellant’s] history of receiving medication for
a psychotic condition,” it was unclear whether Appellant was competent.  Dr.
Womack recommended that the trial court consider Appellant incompetent for the
time being, pending further examination to rule out the possibility that he was
malingering.[3]

The
trial court authorized further evaluation.  Dr. Womack interviewed Appellant’s
sister, interviewed Appellant for an additional forty-five minutes, and had him
complete an intelligence exam.  Dr. Womack also administered two additional tests
to determine whether Appellant was exerting “optimal effort.”

After
his second evaluation, Dr. Womack reported to the trial court that Appellant’s
performance on one of the effort-measuring tests “strongly support[s] the
opinion he was not exerting optimal effort to do his best.”  Dr. Womack also noted
that Appellant had “made a considerable effort” to answer test items incorrectly.
 Although Dr. Womack suspected that Appellant may be mildly mentally retarded, he
also concluded that Appellant had exaggerated his cognitive deficiency.

On
the issue of Appellant’s competency, Dr. Womack reported that Appellant was
competent as statutorily defined, having “a minimal, but acceptable degree of
rational and factual understanding of the proceedings against him, as required
by the Texas Code of Criminal Procedure.”

During
a pretrial hearing held before a magistrate in June 2011, Counsel advised the
trial court that two psychological assessments had found Appellant competent to
stand trial.  Counsel also reported that he had represented Appellant for approximately
six months and had during that time gone over with Appellant the psychological
assessments, of which he reported that Appellant “understood everything that
we’ve talked about.”  Counsel advised the trial court that he thought “the
problem is that [Appellant] doesn’t like what I’m telling him; therefore, it’s
turned into somehow now he doesn’t understand it.”

Counsel
also stated that when he and Appellant had discussed their defensive strategy,
Appellant told him that he was refusing to cooperate and would not give Counsel
the names and locations of possible witnesses.  Counsel advised the trial
court, “He’s told me he’s not going to sign any paperwork.  He’s also not going
to testify.  He’s not going to do anything in this case is what I’ve been told,
so that’s what [sic] we’re here today.”

The trial
court at that point engaged Appellant in an extended colloquy during which
Appellant remained uncooperative with both the trial court magistrate and
Counsel.  After the nearly twenty minute hearing, the trial court found
Appellant competent to stand trial.

On
the day of jury selection a week later, the trial court considered Appellant’s motion
for continuance.  Noting that Appellant had displayed an “inclination to become
upset and unruly in the courtroom,” had become upset during the pretrial
hearing, and had engaged in “obvious efforts to avoid trial,” and considering
“the whole history of this case,” including the trial court’s interaction with
Appellant, the trial court denied the motion, finding that it “was another
attempt” by Appellant “to manipulate his trial date and the criminal justice
system.”

The
next day, Appellant secreted a razor blade into the holding cell and cut
himself with it, prompting the trial court to order another competency evaluation. 
Dr. Womack interviewed Appellant again––this time for thirty minutes–– and also
had discussions with medical staff at the jail and with the trial court judge. 
In his third report, Dr. Womack noted that Appellant’s speech became
“pressured” when Appellant complained about his lawyer but that Appellant “was
easily understood.”  Dr. Womack further reported that “when allowed to engage
in a diatribe about his attorney, [Appellant’s] speech was sequential, relevant,
and generally logical.”  He also observed that Appellant made unsolicited
comments that suggested he understood more than he professed.  For example, he
remembered being in court when the jury was “picked,” and understood that was
what was happening at the time, which was established when he was asked if he
had been found “guilty,” and he replied by saying, “No, they just picked the
jury.”  Dr. Womack concluded that nothing in Appellant’s current presentation
altered his earlier opinion that Appellant was competent to stand trial.

When
trial resumed, Appellant specifically invoked his right to call witnesses, and
he also addressed the trial court as follows:

THE DEFENDANT: 
Ma’am, I have –– this is the problem I’m having with Officer Willett –– I mean,
with Attorney Willet [(Counsel)].  I have a problem.  I know I do mentally. 
But I’m not as stupid as he thinks I am.  Okay?

 

          I know
when––I know when something is not right.  Okay?

 

          Now, he was
trying to limit me to only one witness, which was Sonja Jacobs, limit me to one
witness.  Then he tells us that due to the aggravated sexual assault case, he
come back and tells us that the DA says that the girl is out of the state. 
Well, we had –– we had our own investigation and our own investigators who
found out that the girl is not out of the state, that the reason he moved on to
the next case[4]
was because I had a substantial amount of witnesses that would have been ––
that would have been in my favor on that case.  So they jumped to another case,
and ––which was only leaving me one witness and limit my witness, and then had
you stricken the witnesses that I needed.  I still have two witnesses, two
witnesses that he has not even subpoenaed that can place this girl at my
apartment at two different times, at two different––I have three people that
can place her––

At
that point, the trial court interrupted Appellant to counsel him against
discussing trial strategies on the record in front of the prosecution, but Appellant
continued:

          THE
DEFENDANT:  They’re going to find out anyway because I feel that he’s working
with them.  That’s the whole problem that I have.  I mean, that’s the whole
problem that I have.  I wish you would just––I just––I know I don’t have to have
on these.[5]  I know how to act on
trial.  I wish you would just give me another attorney, an attorney that cares
about me.  Okay?  Cares about this case.

 

          I didn’t do
this, and I want to testify.  I know I’m going to testify, okay, because I have
a right to testify because I ––because it’s a lot of things that’s not going to
get put in the court if I leave it up to [Counsel].  It’s not going to get put
in front of the jury, and it’s not going to come out.  You know what I’m
saying?  I know this, and he knows this.  Okay?  It shouldn’t have to go––be
like this, Judge.  It shouldn’t have to be like this.

 

. . . . .

 

The Court ordered an
investigator.  I mean, literally, this investigator was paid to––to pass out
three subpoenas, because that’s all he did.  He didn’t find any witnesses.  He
didn’t do anything.  He didn’t find anything that I sit there and talk to him
about and [Counsel] about.  Nothing was done.  He sits there and tells me
yesterday, “I called him, but I couldn’t get him to call me back.”  Come on. 
How can you not get a court-ordered investigator online with his attorney who
hired him?  I mean, do you––I mean, can’t you see why I’m upset?  That is why
I’m upset.

 

THE COURT:  I
understand why you’re upset.

 

THE DEFENDANT:  A
juror stood up––a juror stood up and said, “You know what, sir, [Counsel], I’m
a little confused because the vibe I’m getting from you is that he’s already
guilty.”  I mean, come on.  If they can see this, how do you expect I’m
supposed to feel?  A juror––that’s what the jury said. . . .  Come on.  It’s
not right.  I just want a fair trial.  That’s all.  If I’m found guilty, okay,
fine, but I want a fair trial because I didn’t do this.

The
State then proceeded with its case and rested, after which the defense
presented four witnesses before resting.[6]  The jury convicted on
two counts, and the trial court sentenced Appellant to life in prison.

Discussion

Appellant
contends that the trial court abused its discretion by disregarding the
statutory procedures for determining competency and by not assembling a jury to
determine whether he was competent to stand trial.  He argues that the trial
court should have conducted a jury trial on the issue because evidence raised a
bona fide doubt that he was competent.  He also contends that the trial court
further erred by disregarding the procedures in chapter 46B of the code of
criminal procedure by entering an informal finding of competency without a trial
and by soliciting testimony confirming his competence to stand trial.

The
conviction of an accused person while he is legally incompetent to stand trial
violates due process.  See McDaniel v. State, 98 S.W.3d 704, 709 (Tex. Crim.
App. 2003).  A defendant is incompetent to stand trial if he does not have a
“(1) sufficient present ability to consult with [his] lawyer with a reasonable
degree of rational understanding; or (2) a rational as well as factual
understanding of the proceedings against [him].”  Tex. Code Crim. Proc. Ann.
art. 46B.003(a) (West 2006).  A defendant is presumed to be competent to stand
trial, and incompetence must be established by a preponderance of the evidence. 
Id. at art. 46B.003(b).

The
standard of review is whether the trial court abused its discretion by failing
to empanel a jury for the purpose of conducting a competency hearing.  Moore
v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999), cert. denied,
530 U.S. 1216 (2000); Lawrence v. State, 169 S.W.3d 319, 322 (Tex. App.––Fort
Worth 2005, pet. ref’d).

Contrary
to Appellant’s position, a jury trial is not required when evidence raises a
bona fide doubt that a defendant is competent.  When there is evidence that is
sufficient to raise a bona fide doubt as to a defendant’s competency, a trial
court shall first conduct an informal inquiry to ascertain whether there
is evidence that would support a finding of incompetence.  Tex. Code Crim.
Proc. Ann. art. 46B.004(c) (West Supp. 2012);  Montoya v. State, 291
S.W.3d 420, 425 (Tex. Crim. App. 2009).

If an
informal inquiry shows that evidence exists that would support a finding of
incompetence, the trial court shall then order an examination to determine
whether the defendant is incompetent to stand trial.  Tex. Code Crim. Proc.
Ann. art. 46B.005(a) (West 2006).

Only
after such an examination, if the trial court still has a bona fide doubt about
the defendant’s competency, need the trial court conduct a formal hearing on
the issue.  See Montoya, 291 S.W.3d at 424–25; Moore, 999 S.W.2d
at 393.  And the formal hearing need not be conducted before a jury unless a
party requests it or the trial court determines on its own motion to conduct the
hearing before a jury.  Tex. Code Crim. Proc. Ann. art. 46B.051 (West 2006).

Neither
party in this case requested a jury trial on the issue of competency.  To the
extent that Appellant claims the trial court erred by not granting him a jury
trial to determine whether he was competent to stand trial, that part of his
claim is overruled.  See id.

The
State argues that the trial court followed proper statutory procedure because it
made several informal inquires into Appellant’s competency.  The State points
to the trial court’s ordering an evaluation by the county mental health
department; Dr. Womack’s initial examination with follow-up testing and
evaluation, which the trial court ordered in response to Appellant’s motion;
the pretrial hearing during which Appellant’s counsel advised the trial court
that he believed Appellant was competent; and the trial court’s ordering Dr.
Womack to conduct yet another evaluation of Appellant after he had cut himself
with a smuggled razor blade.  We agree with the State.

Each
of these informal inquires showed that Appellant was competent to stand trial. 
First, the county mental health department found him competent.  Second,
although Dr. Womack’s initial examination was inconclusive and prompted him to recommend
that the trial court consider Appellant incompetent until he could rule out
malingering, his further examination showed that Appellant was malingering and convinced
Dr. Womack that although Appellant had certain mental health issues, those issues
did not render him incompetent to stand trial.  Third, Counsel, who had worked
with Appellant for approximately six months and had discussed strategies with
him, told the trial court that he thought Appellant was competent.  Fourth, when
the trial court asked Dr. Womack after evaluating Appellant for the third time if
anything had changed his opinion that Appellant was competent, Dr. Womack
replied that nothing he had seen had changed his mind.

These
expert conclusions together with Appellant’s own arguments and statements in
court did not create a bona fide doubt as to his ability to consult with
Counsel with a reasonable degree of rational understanding or as to his
rational or factual understanding of the proceedings against him.  See
Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008), cert.
denied, 555 U.S. 1105 (2009).

Moreover,
Appellant’s own statements to the trial court confirmed that he understood the
trial process and that he had his own trial strategy.  His argument at trial
was not that he did not understand the process but that Counsel would not
pursue the case as Appellant thought best.  Appellant expressly stated “I’m not
as stupid as he [Counsel] thinks I am.”  It was within the zone of reasonable
disagreement for the trial court to conclude from this that Appellant was
competent to stand trial.

Conclusion

Based
upon these facts in the record, we hold that the trial court followed the
proper statutory procedures set out for determining competency to stand trial
and did not abuse its discretion by finding that Appellant was competent.  No
error being shown, Appellant’s point is overruled and the judgment is
affirmed.  See Montoya, 291 S.W.3d at 425; Iniquez v. State, ––S.W.3d––,
No. 03-11-00333-CR, 2012 WL 2742632, at *5 (Tex. App.––Austin July 6, 2012,
pet. ref’d).

 

 

PER CURIAM



 

PANEL: 
GABRIEL, WALKER,
and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 23, 2012









[1]See Tex. R. App. P.
47.4.





[2]This is a pseudonym.





[3]The report states that
further examination would “assist in forming a confident opinion as to
[Appellant’s] true deficits and/or psychotic features, and perhaps help
determine what features are due to lack of effort or purposeful distortion.”





[4]Appellant had multiple
cases pending.





[5]Because earlier Appellant
had threatened Counsel, he had been handcuffed and shackled.





[6]After consulting with
Counsel, Appellant elected not to testify.