**732·15**

ORIGINAL

NO. 03-14-00059

| | | | |
|---|---|---|---|
| THOMAS BROCK<br>Appellant | § | IN THE COURT OF | |
| | § | | |
| | § | | |
| Vs. | § | CRIMINAL APPEALS | |
| | § | | |
| THE STATE OF TEXAS<br>Appellee | § | OF TEXAS | |
| | § | | |
| | § | | |

FILED IN
COURT OF CRIMINAL APPEALS

AUG 17 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 17 2015

Abel Acosta, Clerk

**PETITION FOR DISCRETIONARY REVIEW
UNDER TEXAS RULE OF APPELLATE PROCEDURE 68**

TO THE HONORABLE JUDGES OF SAID COURT:

Now, Comes, THOMAS BROCK, Appellant, and files this Petition for Discretionary Review, Under, Texas Rules of Appellate Procedure 68. And request this Honorable Court to Grant, His (PDR) for the following reasons.

I.

Appellant, Brock, was incompetent on the day of his sentencing and trial. Due to he was having major problems with his (PTSD) and having flashbacks, hearing voice's and having nightmares of what had happen to his-self in the past.

In citing **Bouchillon V. Collins 907 F.2.d 589, 592 (5th Cir 1990)**

**(finding that there was sufficient evidence at trial to establish a reasonable probability that defendant was incompetent at the time of a guilty plea to post-traumatic stress disorderer).**

It is clear the Appellant, Brock was in a delusional state while in the county jail and at the time of court which he had inform his Court Appointed Attorney of these on going problems and she did noting to inform the court of her, client's problems and the bizarre things he had told her about...etc! Such as experiencing hallucination, seeing satan, having nightmares reliving the killing of his victim...etc.

1.

## II.

Appellant, Brock, contends that the district "court erred by failing to make a sua sponte inquiry into [his] competency to stand trail" after he return from the state hospital.

Thus, Appellant, Brock, had a clear case of Ineffectinve Assistance of Counsel due to the fact Appellant's Attorney refuse to bring it before the Court that her, Client was having flashback, nightmares and suffino from on going (PTSD). Before he was going to trial and while at trial.

The actual fact is Appellant, Brock, Attorney didn't give him any type of listing to about his on going mental problems which he repeatedly told her about things going on in jail and in court.

Appellant, Brock also told his, Attorney about he was also having flashback's of other things such as his first case of the alleged attempted murder. And the fact he was seeing things like satan, his self coming to get him out of jail. He also recalled being with satan at a place in the woods and a lot of other's of satan lot was there to take part in a sacrifice that satan was doing to a young lady and they all drank her blood once satan had cut her throat. He told his, Attorney about this and the other on going things and she just smile at him.

So the above clearly show's Appellant, Brock was not at all competent to stand trial and shouldn't of been able to go to a trial. He should of received a second inpatient treatment and observation. Due to his mental state at time of trial.

citing: see **Turner V. State, 422 S.W. 3d 676,688 (Tex. Crim.App. 2013)(explaining that person who is not competent may not be put on trial without violating due process)**;

So the fact that Appellant, Brock was repeatedly telling his, attorney of all the bizarre things about drinking a young lady's blood and being with satan. His, Attorney should of put the court on notice of her client having the flashback's and nightmare's and on going episode's of (PTSD)....and other serious mental illness problems while in the county jail and going to trial.

For the above reasons within this Petition it is claer that Appellant, Brock's "DUE PROCESS VIOLATION" Therefore the Appellant request that his (PDR) be granted and his being convicted be over turn and him be given a second inpatient treatment and observation.

Respectfully submitted

Thomas Brock

## PRAYER

WHEREFORE, PREMEMISES, CONSIDER, Herein the Appellant, Pray's the Honorable Court will Grant this (PDR) and over turn the conviction of said Appellant.

Respectfully submitted

Thomas Brock

## CERTIFICATE OF SERVICE

I, THOMAS BROCK, Appellant, hereby certify under penalty of perjury under the Laws of the United States of American that on August 10, 2015 a Origional of the above for-going (PDR) was send by U.S. Mail to the below address.

CLERK OF THE COURT
OF CRIMINAL APPEALS
P.O. BOX 12308
Austin, Texas 79711

Respectfully submitted

Thomas Brock
TDCJ-ID #1907902
Clements, Unit
9601 Spur 591
Amarillo, Texas
79107-9606

c/c Brock file

3.

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00059-CR

### Thomas Brock, Appellant

### v.

### The State of Texas, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
## NO. D-1-DC-12-202194, HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING

## MEMORANDUM OPINION

Thomas Brock was charged with murdering Luis Vigil. *See* Tex. Penal Code § 19.02(b) (setting out elements of offense of murder), (c) (providing that in general murder is first-degree felony). In addition, the indictment contained an enhancement paragraph alleging that Brock had previously been convicted of the crime of attempted murder. *See id.* § 15.01 (governing attempt offenses). After he was charged, Brock agreed to plead guilty to the offense at issue, but he entered a plea of not true regarding the enhancement allegation. Once the district court accepted Brock's plea, it sentenced him to 45 years' imprisonment. *See id.* § 12.32 (setting out punishment range for first-degree felonies). The judgment reflects that Brock pleaded true to the enhancement allegation. On appeal, Brock contends that the district "court erred by failing to make a *sua sponte* inquiry into [his] competency to stand trial," that the district "court erred by finding [that he] was competent," and that the "judgment of conviction should be amended to reflect that [he] entered a plea of not true

to the enhancement paragraph." We will modify the judgment to reflect that Brock pleaded not true to the enhancement allegation and affirm the district court's judgment of conviction as modified.

## DISCUSSION

**Sua Sponte Inquiry into Competency**

In his first issue, Brock urges that the district court should have made its own determination regarding his competency before accepting his plea after he made "bizarre remarks . . . at the outset of his trial." *See Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013) (explaining that person who is not competent may not be put on trial without violating due process); *see also* Tex. Code Crim. Proc. art. 46B.004(b) (stating that "[i]f evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial").

As support for this assertion, Brock points to the portion of the record in which the district court asked about his history of hearing voices prior to accepting his plea of guilty. That exchange occurred as follows:

> [Court]: Okay. I think somewhere in all of the materials that I've sort of briefly reviewed here, there's some indication that you have a history of hearing voices or something along those lines; is that right?
>
> [Brock]: Yes, sir, that's true.
>
> [Court]: Sort of tell me a little bit about how long that's been going on and what that's like.
>
> [Brock]: Since I was 15, I've heard voices that have told me to do things to myself and some things are inappropriate.

2

[Court]: So without asking -- I'm not asking you --

[Brock]: Right.

[Court]: -- for the details. I'm just sort of trying to get a general --

[Brock]: Yes, sir.

[Court]: -- understanding of your situation.

[Brock]: Yes, sir. The voices would definitely -- they'd make me do things.

(Sotto voce discussion between attorney and defendant)

[Brock]: Oh, yeah, yeah. Around eight or nine, the invisible stuff started happening.

[Court]: When you say invisible stuff, what are we talking about?

[Brock]: I'm talking about my uncle who was able to use a device to make himself transparent, and he's a freemason and different stuff. He's a wealthy man. I've never been able to prove it, but I'd like to just to get him in here, but I can't, you know. It really is shocking how he did that. Another thing that happened to me was when I was an infant, I was taken to the church of Satan and my head was cut off and --

[Court]: How did it get back on?

[Brock]: Okay, okay, good question. There is a replication device used made of front surface, silver-coated mirrors and halogen lights and it breaks down subatomic particles and restabilizes them and in a matter of seconds it's a molecular replicator. It was used by Nazis at one time and now still goes on being used by the Illuminati and people who don't talk about it, but I talk about it because it was used on me. I think what happened was, I was thought of to have a decent life with my grandfather and everybody and they wanted me to come up and go to the Air Force and also become a Skull and Bones member, an Illuminati member and do something, you know, spectacular for my family, like any family would want their child to grow to be a doctor, et cetera. Instead that happened to me and I look on being done like that and I've went over it in my mind and I tried to write to my mom and my dad, hey, this has happened to me. I know it sounds completely unbelievable, but I know for sure it's happened. And so far I haven't gotten any feedback and dialogue and I wish I could.

3

In light of this exchange, Brock contends that there was "ample reason to suggest that his competency was in question" and that the district court abused its discretion by failing to conduct a further inquiry into his competency. Moreover, Brock notes that he has had a history of these types of delusions and then chronicles the testimony and evidence of his extensive history of mental-health issues and his periods of incompetency that were presented to the district court prior to his entering his plea of guilty. In particular, Brock points to the following:

- Shortly after his arrest, he told the police that "he hears voices and had been replicated and reincarnated over the years" and that he killed the victim to "instill belief."

- Approximately one month later, his counsel and the State raised the issue of competency and asked that he be examined by a psychiatrist.

- Subsequent to the evaluation, his attorney and the State agreed that he was incompetent to stand trial, and he was committed for inpatient treatment and observation for 120 days.

- After the expiration of that period, the State moved to extend his mental-health treatment.

- During the hearing on the State's motion, one of his treating physicians, Dr. Maureen Burrows, testified that he was not competent to stand trial; that he was unable to confer with counsel; that he was suffering from "schizo-affective disorder, bipolar type"; that he was "still ... paranoid and delusional, and experiencing hallucinations that are integral to his case, and it impairs his ability to have a rational approach in this case"; that he believed that the criminal offense stemmed from a racial war as well as a replicator box that copied his identity; and that he needed to be hospitalized for treatment.

- At the end of the hearing, the magistrate judge extended his inpatient treatment for a period not to exceed twelve months.

4

In light of the preceding, Brock insists that the district court abused its discretion by failing to further inquire into his competency before accepting his plea.

Generally speaking, a "defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc. art. 46B.003(b). "A person is incompetent to stand trial if the person does not have":

> (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or
>
> (2) a rational as well as factual understanding of the proceedings against the person.

*Id.* art. 46B.003(a). Moreover, the defendant, the State, or the trial court may suggest that the defendant is not competent to stand trial. *Id.* art. 46B.004(a). In addition, "[o]n suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c). Further, a "suggestion of incompetency is the threshold requirement for an informal inquiry . . . and may consist solely of a representation from any credible source that the defendant may be incompetent." *Id.* art. 46B.004(c-1); *see also id.* (explaining that trial court "is not required to have a bona fide doubt about the competency of the defendant" before inquiry may be initiated). Among other factors, competency determinations may be based on the ability of the defendant to:

> (A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;
>
> (B) disclose to counsel pertinent facts, events, and states of mind;

5

(C) engage in a reasoned choice of legal strategies and options;

(D) understand the adversarial nature of criminal proceedings;

(E) exhibit appropriate courtroom behavior; and

(F) testify.

*Id.* art. 46B.024(1); *see also id.* art. 46B.004(c-1) (providing that trial court may consider factors listed in article 46B.024 when deciding competency). In making a determination, the court may also consider whether the defendant has a mental illness, how long the condition is expected to last, how much the condition impairs the defendant, and whether the defendant is taking medication. *Id.* art. 46B.024(2)-(5). Although evidence of a history of mental illness might bear on this determination, that type of evidence will only compel further action by the trial court if it indicates that the defendant is currently incapable of understanding the proceedings against him or of consulting with his attorney. *See Iniquez v. State*, 374 S.W.3d 611, 617 (Tex. App.—Austin 2012, no pet.) (applying bona-fide standard from previous version of statute).

The decision by a trial court to not "conduct further inquiry into the" defendant's competency is reviewed for an abuse of discretion. *See Luna v. State*, 268 S.W.3d 594, 599 (Tex. Crim. App. 2008). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the trial court's ruling will be upheld provided that the decision "is reasonably supported by the record and is correct under any theory of law applicable to the case," and reviewing courts must consider "the trial court's ruling in light of

6

what was before the trial court at the time the ruling was made." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

In addition to the evidence and testimony that Brock points to, other evidence regarding Brock's mental health was presented before the district court accepted his plea.[1] Specifically, a few months after the magistrate approved the request for extended mental-health treatment, another hearing was convened in response to Brock's attorney's request that Brock be declared competent to stand trial in accordance with the competency report prepared by one of his treating physicians, Dr. Michele Borynski. In the competency report, Dr. Borynski explained that since Brock was transferred to the hospital, he has been treated with various medications[2] and recounted how when he first arrived at the hospital, he was suffering from intense delusions and hallucinations, including ones related to a replicator box and to his identity having been copied. However, Dr. Borynski wrote that "Brock has made progress with respect to the impairments that previously impacted his functioning" and then chronicled the reductions in his symptoms over time and general improvement in his ability to function in the facility. In fact, regarding her most recent interview, Dr. Borynski explained that Brock "did not express delusions or otherwise evidence symptoms of mental illness," was cooperative and polite, and "discussed matters in an organized, logical, and coherent fashion."

---

[1] We note that after Brock made the bizarre comments that form the basis for this issue, his attorney did not suggest that Brock was not competent to stand trial. *Cf. Iniquez v. State*, 374 S.W.3d 611, 618 (Tex. App.—Austin 2012, no pet.) (determining that trial court did not abuse its discretion by failing to conduct sua sponte competency hearing and noting that defendant did not present opinion of mental-health professional "or an affidavit from counsel that [he] could not effectively communicate").

[2] After Brock entered his plea, Dr. Burrows testified and explained that when Brock is on his medication, he distances himself from his "delusions and believes -- or can think about them more flexibly" and that the reduction in his "symptoms might be 90 percent."

7

Furthermore, she concluded that Brock understood the legal consequences of being declared competent or incompetent, demonstrated "an adequate factual and rational understanding of the charge against him and the possible penalties," discussed the allegations, identified the crime for which he was charged, understood the types of pleas that he might enter and how the different pleas might affect the nature of the proceedings against him, discussed potential legal strategies, understood the adversarial nature of a criminal proceeding, demonstrated an ability to engage in appropriate courtroom behavior, and possessed the ability to testify if he chose to.[3] During the hearing to restore his competency, Brock confirmed that he was able to discuss his case with his attorney as well as the various types of pleas that he could enter. In accordance with the parties' wishes and with the recommendation contained in the report, the district entered an order determining that Brock had been restored to competency. *See* Tex. Code Crim. Proc. art. 46B.112 (authorizing trial court to determine that defendant has been restored to competency if both parties agree and court concurs).

---

[3] In addition to the report submitted when Brock's competency was restored, another report prepared by another physician, Dr. David Landers, was also admitted as an exhibit by Brock after the district court accepted his plea. In the report, which was prepared a few weeks after Brock's competency was restored, Dr. Landers concluded that Brock was competent to proceed, correctly identified the charge against him, "demonstrated an adequate understanding of basic legal processes" and of the adversarial system, "did not express any grossly unrealistic expectations about the outcome of his case," and expressed a desire to work with his attorney. However, Dr. Landers also noted that Brock's ability to disclose facts to his attorney was not "optimal," that Brock becomes more symptomatic when stressed, and that during one of his interviews with Brock, Brock appeared more symptomatic and expressed the idea that the victim might not actually be dead, but Dr. Landers concluded that Brock did not "hold" onto that belief "with unwavering conviction" and that the delusion was not "affecting his rational understanding otherwise." Accordingly, Dr. Landers concluded that Brock was competent but that his attorney should be "sensitive to the prospect of deterioration."

Moreover, prior to accepting the plea, the district court asked Brock various questions, including questions about his prior treatment for mental-health issues and about his current level of competency, and Brock answered that he understood the charges against him, that he had "[d]efinitely" been treated for mental-health issues previously, that he believed that he was currently competent to stand trial, that he had discussed potential legal defenses with his attorney, that he understood the nature of the proceedings as well as the charges against him, that he understood the permissible punishment range, that the punishment range might be raised due to the enhancement allegation, and that he wanted to plead guilty to the crime charged but not true to the enhancement.

In addition, the district court asked Brock's attorney whether she thought Brock was competent, and she revealed that Brock was extensively treated and confined in a mental hospital for months in an effort to discover the right medicine to treat his symptoms, to allow the medicine to take effect, and to give Brock time to understand the charges against him. Brock agreed with his attorney's assessment. Brock's attorney also discussed the prior proceeding in which Brock's competency was restored. Next, she revealed that after that determination, she discussed with Brock his options and that they agreed that insanity was not a viable defense because various mental-health professionals had determined that Brock was sane at the time of the offense. In addition, she informed the district court that she and Brock agreed that his best option was to enter a plea but to plead not true to the enhancement allegation.

Next, Brock's attorney sought permission to question him in front of the court to demonstrate his competency. In response to the questions posed by his attorney, Brock answered that he was "charged with felony murder, first-degree felony murder"; that the punishment range was "from 5 to 99 years in prison"; and that by pleading guilty, he was waiving his rights, including the

9

right to remain silent and to have a jury trial. In fact, Brock explained that rather than risk a jury trial, he wanted to appear before the district court "and ask [its] favor. That's what I've decided to do." After Brock finished answering her questions, his attorney stated that she believed that Brock was competent.

Once Brock's attorney finished her questioning, the district court clarified that Brock intended to give up his right to a jury trial and desired to plead guilty and to allow the district court to assess the proper punishment, and Brock agreed that was his desire. Further, the district court asked Brock whether he understood that he was giving up his right to confront witnesses who might testify against him and to present evidence and call witnesses to testify on his behalf, and Brock responded that he understood. In addition, the district court inquired whether Brock understood that if he entered a plea of not guilty, the State would be required to prove his guilt beyond a reasonable doubt and that his failure to testify could not be held against him, and Brock answered that he understood. Next, the district court asked whether his decision to enter a guilty plea was of his "own personal decision-making" and was not due to any threats or coercion, and Brock agreed that he had decided to enter a guilty plea. Finally, concerning the written plea, the district court inquired whether he discussed the plea with his attorney before signing it; whether he understood that by signing it, he waived his constitutional rights and agreed that the allegations against him were true; and whether his signature on the plea was his, and Brock answered affirmatively to all of the questions.

Although Brock points to evidence concerning his prior mental illness and to the portion of the record in which he informed the district court about delusions that he has had, given the remainder of his interactions with his counsel and with the district court after his competency had

10

been restored and before the district court accepted his plea, we cannot conclude that the district court abused its discretion by failing to conclude that there was a current suggestion that Brock did not have a sufficient ability to rationally consult with his attorney or that Brock did not have a rational and factual understanding of the proceedings against him. For those same reasons, we also cannot conclude that the district court abused its discretion by failing to conduct an informal inquiry into his competency. *Cf. Hobbs v. State*, 359 S.W.3d 919, 925 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that history of mental illness and being on psychiatric medications are insufficient "to warrant a competency inquiry absent evidence of a present inability to communicate with his attorney or understand the proceedings"); *Learning v. State*, 227 S.W.3d 245, 250 (Tex. App.—San Antonio 2007, no pet.) (explaining that to be entitled to second competency hearing after being deemed competent, "defense counsel would have had to offer new evidence of a change in . . . mental condition since the first competency hearing").

For these reasons, we overrule Brock's first issue on appeal.

**Competency Determination**

In an alternative argument related to his first issue, Brock contends in his second issue that if this Court were to conclude that the district court did in fact convene an informal inquiry into Brock's competency through the questions that it posed to Brock, then we would have to determine that the district court abused its discretion when it determined that Brock was competent to stand trial. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009) (explaining that competency determinations are reviewed under abuse-of-discretion standard), *superseded by statute on other grounds as stated in Turner*, 422 S.W.3d at 692 n.31.; *see also* Tex. Code Crim. Proc.

11

art. 46B.005 (requiring trial court to hold trial on competency if it performs informal inquiry and determines that evidence exists to support finding of incompetency). Essentially, Brock seems to be arguing that if the district court did in fact hold an informal hearing, the statements that he made regarding persistent delusions that he has experienced plus the evidence of his history of mental illness, including his history of substance abuse as well as his diagnosis for schizoaffective disorder and a personality disorder, would be enough to constitute some evidence to support a finding of incompetency, *see Turner*, 422 S.W.3d at 692-93 (explaining that when convening informal inquiry, trial courts set aside indications that defendant is competent and consider whether there is some evidence that would rationally lead to conclusion of competency), and the district court would have been obligated to stay the proceedings, *see* Tex. Code Crim. Proc. art. 46B.004(d), and to order an examination and hold a trial to determine his competency, *id.* art. 46B.005. In light of the preceding, Brock contends that, in the absence of an examination and trial on the issue of his competency, the district court's determination that he was competent was premature.

However, having determined that the district court did not abuse its discretion by failing to conduct an informal inquiry into Brock's competency, we need not decide whether the district court improperly determined that Brock was competent after performing an informal inquiry.

For these reasons, we overrule Brock's second issue on appeal.

**Enhancement Allegation**

In his third issue on appeal, Brock contends that the district court's judgment incorrectly reflects that he entered a plea of true to the enhancement allegation contained in the indictment. As pointed out by Brock, the record in this case reveals that Brock indicated his desire

to plead not true to the enhancement allegation. In light of the record, Brock and the State both agree that the district court's judgment should be modified to show that he entered a plea of not true to the enhancement allegation. This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Accordingly, we sustain Brock's third issue on appeal and modify the judgment of conviction to reflect that Brock pleaded not true to the enhancement allegation.

## CONCLUSION

Having sustained Brock's third issue on appeal, we modify the district court's judgment of conviction to reflect that Brock pleaded not true to the enhancement allegation. Having overruled Brock's remaining two issues, we affirm the district court's judgment of conviction as modified.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Modified and, as Modified, Affirmed

Filed: May 22, 2015

Do Not Publish