**Opinion filed May 19, 2016**



# In The

# Eleventh Court of Appeals

_____

## No. 11-14-00124-CR

_____

## ROBERT ELESTER LATHAM, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 18793B**

## M E M O R A N D U M   O P I N I O N

Robert Elester Latham appeals his jury conviction for aggravated assault. The trial court made an affirmative deadly weapon finding and sentenced Appellant to confinement for life in the Institutional Division of the Texas Department of Criminal Justice. In three issues on appeal, Appellant asserts that (1) the trial court erred when it proceeded to trial without first considering and ruling on Appellant's competency to stand trial, (2) the trial court erred when it denied Appellant's requests for a mistrial based on an out-of-court conversation between a State's witness and a juror, and (3) the evidence was insufficient to support the jury's verdict

of guilty. We modify the judgment of the trial court to correct a clerical error and affirm as modified.

*Background Facts*

Around 10:00 or 11:00 a.m. on October 29, 2012, Appellant arrived for a social visit at Connal Jennings's apartment. In addition to Jennings, two other people were present in the apartment when Appellant arrived: Raimee Brown and Wayland Buddy Bailey. Brown testified that she, Appellant, Jennings, and Bailey all smoked methamphetamine together that morning.

Sometime before noon, Brown was stabbed in the back and arm while she was sitting on the couch. However, no one actually saw the stabbing occur, including Brown. Speakers and a keyboard piano divided the one-room apartment down the middle. A computer and chairs were on one side of the keyboard, and a couch, television, and more chairs were on the other side. Brown was sitting on the couch with her laptop computer and was listening to music on YouTube. Appellant was sitting on the couch with Brown. On the other side of the room, Jennings was sitting in front of the computer, and Bailey was standing behind him looking at the computer screen.

Brown testified that she had leaned forward with her eyes closed and that, the next thing she knew, Appellant was straddling her. She also testified that she could feel blood gushing out of her back and arm and that she saw a knife in Appellant's hand while he was straddling her. Jennings stood up and said to Appellant: "Hey, what the f--k are you doing?" Appellant replied: "I thought this is what you wanted me to do." Jennings then forcibly removed Appellant from the apartment and called 9-1-1. Paramedics arrived and took Brown to the hospital, and Jennings gave a statement to the police.

A warrant was issued for Appellant's arrest, and on October 30, Appellant was spotted walking down the street by Officer Jake Weise of the Abilene Police

2

Department. Appellant ran, but Officer Weise caught him. Officer Weise arrested Appellant, searched him, and found a knife. The knife was sent to a forensic lab for testing. DNA testing of blood found on the knife matched a DNA sample taken from Brown.

Dr. Steven Wallace Brown, a physician familiar with Brown's injuries, testified that Brown suffered from Brown-Sequard Syndrome because of the stab wound to her upper back. Dr. Brown also testified that Brown's spinal cord had been bruised and that the injury would cause abnormalities in the ability to move, feel pain sensations, and feel temperature sensations in the lower extremities. Brown testified that she was initially unable to move her lower extremities, and although she still had no feeling in her right leg at the time of trial, she had regained the ability to walk.

*Analysis*

In his third issue, Appellant challenges the sufficiency of the evidence to support his conviction for aggravated assault. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at

3

899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The jury convicted Appellant of aggravated assault as charged in the second paragraph of the indictment, which charged Appellant with intentionally and knowingly causing serious bodily injury to Brown by stabbing her "on and about the back and shoulder" with a knife. A person commits the offense of assault if that person intentionally, knowingly, or recklessly causes bodily injury to another person. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2015). As relevant to this case, the offense becomes aggravated assault if that person commits the offense of assault that causes serious bodily injury. *Id.* § 22.02(a)(1) (West 2011). We note at the outset that Appellant does not challenge the degree of injury suffered by Brown as a result of being stabbed.

Appellant premises his sufficiency challenge on the assertion that no direct evidence was presented that he was the assailant, and he argues that no evidence was offered to exclude the possibility that Brown was actually assaulted by one of the other two people in the room. Although Jennings and Bailey were present in the room when Brown was stabbed, no one testified that they actually saw Appellant stab Brown or heard any altercation prior to the stabbing. Further, Appellant asserts that the DNA recovered from the knife was not compared to DNA samples from Bailey or Jennings to determine whether one of them could have been the assailant.

Despite Appellant's assertions, the State did not have the burden of disproving that Bailey or Jennings was the assailant. *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). While no one witnessed the actual stabbing, Brown

4

testified that, when she opened her eyes after she was stabbed, Appellant was on top of her. Jennings also testified that he looked over when he heard Brown scream and saw that Appellant was on top of Brown. As noted previously, Jennings testified that he immediately confronted Appellant about stabbing Brown and that Appellant replied, "I thought this is what you wanted me to do." When Appellant was arrested after the stabbing, he was found to be in possession of a knife with blood on it. DNA extracted from the knife matched a sample taken from Brown. The circumstantial evidence presented by the State was probative of Appellant's guilt. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of aggravated assault beyond a reasonable doubt. We overrule Appellant's third issue.

In his first issue, Appellant asserts that the trial court committed reversible error by proceeding to trial without first considering and ruling on Appellant's competency to stand trial. We review issues involving competency determinations for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009). The conviction of an accused person while he is legally incompetent to stand trial violates due process. *See McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003); *Iniquez v. State*, 374 S.W.3d 611, 614 (Tex. App.—Austin 2012, no pet.). "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006). A person can be considered incompetent if (1) they do not have sufficient present ability to consult with their lawyer with a reasonable degree of understanding or (2) they do not have a rational and factual understanding of the proceedings. *Id.* art. 46B.003(a).

The procedure by which a trial court determines competency is set out in Chapter 46B of the Texas Code of Criminal Procedure. *Id.* ch. 46B (West 2006 & Supp. 2015). "This determination involves a two-step process: first, an informal

5

'competency inquiry'; and second, if applicable, a mandatory 'competency examination' and formal 'competency hearing.'" *Iniquez*, 374 S.W.3d at 615. In the first step, the trial court conducts an informal inquiry, known as a competency inquiry, to determine whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. *Id.* If the trial court determines that such evidence exists, the court proceeds to the second step, at which time the court must order a psychological examination to determine whether the defendant is competent to stand trial. *Id.* In addition, the court generally must conduct a formal trial, known as a "competency hearing," in which a factfinder determines "whether the defendant is incompetent to stand trial on the merits." *Id.*

Appellant premises his first issue on the contention that the trial court proceeded to trial without considering the matter of his competency despite the fact that the trial court had previously entered an order requiring Appellant to be examined for competency. On November 29, 2012, Appellant's trial counsel filed a pre-indictment request to have a mental health evaluation conducted to determine Appellant's competency to stand trial. On December 3, 2012, the trial court entered an "Order for Psychiatric Examination" for Jason D. Dunham, Ph.D. to examine Appellant. However, the record initially filed in this appeal did not reflect that any additional competency proceedings occurred.

After Appellant filed his brief, the State requested the preparation of a supplemental clerk's record. The supplemental clerk's record that was subsequently filed contains a written psychological evaluation prepared by Dr. Dunham pursuant to the trial court's order. As per his report, Dr. Dunham evaluated Appellant on December 12, 2012. He determined that Appellant was competent to stand trial. Accordingly, Appellant's assertion that no further proceedings related to competency occurred in the trial court is incorrect.

6

As we have noted, Appellant's trial counsel filed a pre-indictment request to have a mental health examination performed on Appellant. The trial court granted the request by entering an order providing for Appellant to be evaluated by a mental health professional. Dr. Dunham promptly evaluated Appellant and filed a report with the court wherein he determined that Appellant was competent to stand trial. Appellant did not request a competency hearing at any time. Furthermore, he did not present the trial court with any evidence of incompetency to stand trial.[1] Given the evidence presented, the trial court reasonably concluded that it did not have a bona fide doubt about Appellant's competency to stand trial. *See Iniquez*, 374 S.W.3d at 618. Therefore, we conclude that the trial court did not abuse its discretion by not conducting further competency proceedings. We overrule Appellant's first issue.

In Appellant's second issue, he asserts that the trial court erred by denying his request for mistrial based on an out-of-court conversation involving one of the State's witnesses, the bailiff, and a juror. After the State rested, the trial court recessed the proceedings for an extended lunch break. At the conclusion of the recess, Appellant's trial counsel informed the trial court that he had just observed a conversation occurring between a juror, Jennifer Hobbs; Detective John Wilson, who was a State's witness; and the trial court's bailiff, Danny Wade. Counsel stated that, although he heard them talking, he did not hear them talking about the case.

Detective Wilson, Juror Hobbs, and Bailiff Wade were each questioned about the conversation. Detective Wilson testified that he and Bailiff Wade were talking when Juror Hobbs joined their conversation. He said that they only talked for "seconds" and that they did not talk about the case but, rather, his service in the Air

---

[1]We note that Appellant's trial counsel filed a subsequent motion for a psychiatric examination for the purpose of determining Appellant's sanity at the time of the offense. The trial court granted Appellant's motion by ordering that he be examined by Dr. John Crowley. Dr. Crowley determined that Appellant was "**sane** at the time of the alleged offense."

Force. Bailiff Wade testified that they talked about the Air Force and about Detective Wilson being an Abilene police officer. Juror Hobbs testified that they talked about her husband's service in the Air Force, the town of Abilene, and the crime rate in Abilene and also about how good of a town it was. Juror Hobbs testified that the conversation took place over a span of fifteen minutes. Defense counsel moved for a mistrial and stated that "we believe the integrity of this process has now been compromised and believe that this -- these attempts to influence a juror by ingratiating himself with that juror by having even casual conversations has made a mistrial necessary." The trial court denied the motion.

The next morning, defense counsel re-urged his motion for mistrial. He submitted two videos to the court that did not contain audio but did show the length of the conversation between Detective Wilson, Bailiff Wade, and Juror Hobbs to be eighteen minutes. Trial counsel again moved for a mistrial and, alternatively, asked that the juror be dismissed. The trial court denied the motion for mistrial and denied the motion to have the juror disqualified.[2]

The trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard, and the trial court's ruling must be upheld if it is within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling, and we do not substitute our judgment for that of the trial court. *Webb*, 232 S.W.3d at 109. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Appellant asserts that we are required to review the trial court's denial of his motion for mistrial under the holding in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). The Court of Criminal Appeals in *Mosley* adopted three factors

---

[2]On appeal, Appellant challenges only the denial of his motion for mistrial.

to consider in addressing harm stemming from improper jury argument made by a prosecutor: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id.* The *Mosley* factors only apply when reviewing the denial of a motion for mistrial based on a claim of improper jury argument. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) ("To evaluate whether the trial court abused its discretion in denying a mistrial *for improper jury argument*, this Court, in *Hawkins v. State*, adopted the three factors from *Mosley v. State . . . .*" (emphasis added) (footnotes omitted)). Accordingly, we do not consider the *Mosley* factors in our analysis.

Article 36.22 of the Code of Criminal Procedure provides: "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." CRIM. PROC. art. 36.22. The primary goal of Article 36.22 is to insulate jurors from outside influence. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Chambliss v. State*, 647 S.W.2d 257, 266 (Tex. Crim. App. 1983)). Therefore, if a violation is shown, the effectiveness of possible remedies will be determined in part by whether the conversation influenced the juror. *Id.* A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000); *Moody v. State*, 827 S.W.2d 875, 899–900 (Tex. Crim. App. 1992).

By its express terms, a violation of Article 36.22 occurs when a person converses with a juror "*about the case on trial.*" CRIM. PROC. art. 36.22 (emphasis added); *see Ocon*, 284 S.W.3d at 884 (noting that Article 36.22 prohibits conversing with a juror about the case on trial); *Chambliss*, 647 S.W.2d at 265. The defendant has the burden to establish that, if a conversation occurred between a juror and

someone else, the discussion involved matters concerning the specific case at trial. *Chambliss*, 647 S.W.2d at 266 (citing *Romo v. State*, 631 S.W.2d 504, 506 (Tex. Crim. App. 1982)). No violation of Article 36.22 was shown in *Chambliss* because no evidence was presented that the juror and a witness discussed the case on trial when they had a conversation.[3]

Viewing the evidence in the light most favorable to the trial court's ruling, there was no showing of a violation of Article 36.22 because there was no evidence that Detective Wilson, Bailiff Wade, and Juror Hobbs discussed the case on trial. However, the trial court gave jurors the following instruction prior to trial:

> To avoid looking like you are friendly with one side of the case, do not mingle or talk with the lawyers, the witnesses, the parties, or anyone else involved in the case. You may exchange casual greetings like "hello" and "good morning." Other than that do not talk with them at all. They have to follow these instructions, too, so you should not be offended when they follow the instructions.

Given the fact that the conversation constituted a violation of the trial court's instructions for jurors, the trial court was in the best position to assess the nature of the violation and the harm, if any, that resulted from it. All three participants to the conversation were questioned by the parties soon after it occurred. The paramount issue is whether Appellant received a fair and impartial trial; therefore, the analysis must focus on whether Juror Hobbs was biased as a result of the improper conversation. *See Ocon*, 284 S.W.3d at 887. There is no indication that Juror Hobbs received any new information about the case or that she was biased by merely speaking with Detective Wilson and Bailiff Wade. Accordingly, the trial court did not abuse its discretion by denying Appellant's motion for mistrial. We overrule Appellant's second issue.

---

[3]We note that, in *Chambliss*, the Court of Criminal Appeals stated that the juror "had no business" talking to the witness. *Chambliss*, 647 S.W.2d at 266.

10

Lastly, the jury found Appellant guilty of committing aggravated assault under Section 22.02(a)(1) of the Texas Penal Code by intentionally or knowingly causing serious bodily injury to Brown as charged in the second paragraph of the indictment. However, the judgment reflects a conviction for aggravated assault with a deadly weapon as defined by Section 22.02(b)(1) of the Texas Penal Code, which relates to family or dating violence. We modify the judgment of conviction to reflect the appropriate section of the Penal Code.

## *This Court's Ruling*

We modify the judgment of the trial court to reflect that the "Statute for Offense" in this case is "**22.02(a)(1) Penal Code**," rather than "**22.02(B)(1) Penal Code**." As modified, we affirm the judgment of the trial court.


JOHN M. BAILEY
JUSTICE


May 19, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

11