

# NUMBER 13-20-00308-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**RICHARD ALVAREZ JR.,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

### On appeal from the 105th District Court of Kleberg County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Silva
### Memorandum Opinion by Justice Silva

Appellant Richard Alvarez Jr. appeals the trial court's judgment adjudicating his guilt and assessing concurrent twenty-year imprisonment sentences on charges of aggravated kidnapping, a first-degree felony, and aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 20.04, 22.02. Alvarez contends the trial court abused its discretion by (1) failing to "appoint[] an expert in mental

health to examine [him] regarding the issue of his competency to stand trial" and (2) assessing a constitutionally disproportionate sentence. We affirm.

## I.  BACKGROUND

On September 18, 2019, Alvarez pleaded guilty to the aforementioned charges. The trial court deferred adjudicating Alvarez guilty and placed Alvarez on community supervision for a period of ten years. According to Alvarez's signed judicial confession and stipulation of evidence packet, the offenses involved Alvarez's ex-wife, Christine Noyes. In April 2019, when Noyes reportedly went to Alvarez's residence to drop off food, Alvarez pulled her inside by her hair, dragged her across the floor, and assaulted her with a chain until she "finally got away around 10:30 [a.m.] the next day." Noyes alleged Alvarez threatened to "gut" her and her family. The reporting officer noted that Noyes had "several bruises to her face, arms[,] and legs" and a "large bite mark on the left side of her back."

On March 11, 2020, the State filed a motion to revoke Alvarez's community supervision and adjudicate guilt. The State alleged Alvarez had committed nineteen community supervision violations.

On May 12, 2020, prior to the commencement of revocation proceedings, Alvarez's trial counsel addressed the court:

> The only other issue that I think we need to address is the mental competency of the—of the Defendant, Mr. Alvarez, to proceed. He is a—he has been diagnosed with a mental health disability. He has previously received services and was receiving services from MHID [Nueces Center for Mental Health and Intellectual Disabilities]. And I believe him to be mentally competent, and so does [the State], but I think the Court needs to make that finding on the record as to whether or not the Court should move forward.

The trial court thereafter asked Alvarez whether he understood "what's going on today,"

2

and Alvarez answered affirmatively. The trial court explained what the revocation proceedings entailed and confirmed that Alvarez knew he was on probation and who his attorney was. Alvarez testified that he understood that the trial court would decide where to "send[]" him or what to "sentence[] [him] to." Alvarez affirmed he knew he faced up to ninety-nine years' imprisonment. Alvarez testified that he had previously been diagnosed with "PTSD, severe anxiety, bipolar[,] and manic depression," and he was currently on medication. Alvarez stated that, in preparation for the hearing, he requested that his attorney retrieve some medical records on his behalf.

Alvarez's medical records were admitted and indicated that Alvarez was diagnosed with bipolar disorder on March 2, 2020, after expressing grandiose thoughts about himself. Alvarez underwent a psychiatric evaluation on April 10, 2020, and the examiner noted Alvarez's "thought process" was "normal," and Alvarez was not experiencing any delusions, paranoia, or hallucination. Alvarez agreed that he had previously made statements to his attorney expressing his belief that "there's an affinity or some type of connection with [him] and a higher power" but testified that notwithstanding these ideations, he was able to assist his attorney in his defense.

On cross-examination, Alvarez identified the judge, prosecutor, and defense counsel, and explained everyone's respective roles during the hearing. Alvarez confirmed his attorney had reviewed the admonishments with him and "explained all these warnings" contained in the packet entitled "Court's Written Admonishments to Defendant in Revocation and/or Adjudication Proceedings."

The trial court made no oral acknowledgment regarding Alvarez's competency[1]

---

[1] The clerk's record contains an order entitled "Order Approving Defendant's Written Statements,"

but proceeded with revocation proceedings, wherein Alvarez pleaded true to six alleged violations: failing to avoid persons or places of disreputable or harmful character; admitting to "eating twenty dollars ($20.00) worth of methamphetamine, on or about December 14, 2019"; and testing positive for methamphetamine on or about November 22, 2019, January 6, 2020, February 18, 2020, and February 25, 2020. Alvarez pleaded not true to seven allegations that he had tested positive for benzodiazepine, opiates, and marijuana through the months of January and February. The State declined to proceed on the remaining six allegations, which involved financial arrears. The State called the community supervision custodian of records to testify regarding the contested allegations. The trial court thereafter found all contested and uncontested allegations true and adjudicated Alvarez guilty.

Prior to sentencing, Alvarez testified again. Alvarez's testimony, however, was more verbose and disjointed than previously:

| [ALVAREZ'S COUNSEL:] | And did you also receive mental health services as part of that parole? |
|---|---|
| [ALVAREZ:] | Well, in 2013, I got assaulted by three U.S. marshals in the courtroom. |
| [STATE:] | Objection to not responsive. |
| [ALVAREZ:] | Excuse me? |
| THE COURT: | Sustained. |

---

signed by the trial court on May 12, 2020, the day of the revocation hearing. The order notes, in relevant part:

> The Court finds that said statement and waiver and the attorney's certificate are in due and proper form; that the Defendant is aware of the range of punishment in this case; that the Defendant is mentally competent and his/her plea is made freely, voluntarily, knowingly, and intelligently waived all his/her rights.

| | |
|---|---|
| [ALVAREZ'S COUNSEL:] | Mr. Alvarez, if you could just direct your questions—your answers towards my questions. |
| [ALVAREZ:] | That's what I'm trying to tell you, that they sent me for a mental evaluation after I got assaulted by two U.S. marshals here. |
| [ALVAREZ'S COUNSEL:] | You were receiving services— |
| [STATE:] | Objection, hearsay, Your Honor. |
| THE COURT: | Overruled. |
| [ALVAREZ'S COUNSEL:] | You were receiving services as part of your parole, correct? |
| [ALVAREZ:] | Well, that's what I'm saying, that they sent me for a mental evaluation in Fort[] Worth, Texas, and that's where I came out bipolar and manic depression, PTSD and—bipolar and severe anxiety. |

. . . .

[During the State's questioning of Alvarez:]

| | |
|---|---|
| [STATE:] | While you were out in the community on probation, you tested positive, and you said true that you came out positive for methamphetamines. |
| [ALVAREZ:] | Do you under—do you know the Black Stone group? |
| [STATE:] | No, I don't. |
| [ALVAREZ:] | Huh? It involves the Luminati [sic]. Correct? |
| [STATE:] | So who do you get the meth from? |
| [ALVAREZ:] | That's what I— |
| [STATE:] | Do they come to your house or do they— |

5

[ALVAREZ:]         (Indiscernible) [The probation officer] asked me where I got it from, and I was honest to her. She asked me how I did it, and I was honest to her. I had a problem, like I told you. It's kind of hard when you try to help people and everybody stepped in (indiscernible) law enforcement here in Kingsville, Texas. You know what I mean?

The trial court sentenced Alvarez as set forth above, and this appeal followed.

## II.    COMPETENCY

By his first issue, Alvarez argues that the trial court abused its discretion in failing to sua sponte appoint an expert to evaluate his mental health.

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. ANN. art. 46B.003(b). The same standard applies to revocation proceedings. *See McDaniel v. State*, 98 S.W.3d 704, 709–10 (Tex. Crim. App. 2003); *see also Anderson v. State*, No. 13-14-00485-CR, 2016 WL 3364977, at *2–3 (Tex. App.—Corpus Christi–Edinburg June 16, 2016, no pet.) (mem. op., not designated for publication).

A defendant is incompetent to stand trial if he does not have "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). Before a trial court may conclude that a defendant is incompetent, the court must first initiate an informal inquiry and then, if applicable, order a competency examination and conduct a formal competency trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (b); *Boyett*, 545 S.W.3d at 563.

6

"An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." *Boyett*, 545 S.W.3d at 563 (citing Tex. Code Crim. Proc. Ann. art. 46B.004(a), (c), (c-1)). If, during the informal inquiry, there is "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial, . . . . then the trial court must order a psychiatric or psychological competency examination, and except for certain exceptions, it must hold a formal competency trial." *Id.*; *see* Tex. Code Crim. Proc. Ann. art. 46B.021 (providing that "[o]n a determination that evidence exists to support a finding of incompetency to stand trial, the court shall appoint one or more experts to" "examine the defendant and report to the court on the competency or incompetency of the defendant").

The statutory "some evidence" standard requires a finding of "'more than none or a scintilla' of evidence that 'rationally may lead to a conclusion of incompetency.'" *Boyett*, 545 S.W.3d at 564 (quoting *Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013)). "[A] trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency." *Id.* We review a trial court's decision not to order a competency examination or conduct a formal competency trial for an abuse of discretion, giving great deference on appeal to the trial court's assessment. *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute*, Acts 2011, 82nd Leg., ch. 822, §§ 2 & 21(b), p. 1895 & 1901, eff. Sept. 1, 2011, *as recognized in Turner*, 422 S.W.3d 676; *Farris v. State*, 506 S.W.3d 102, 110 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd). This is because the trial court, which observes first-hand the behavior of the defendant, is "in a better position to

determine whether [the defendant] was presently competent." *Montoya*, 291 S.W.3d at 426.

Alvarez asserts that the trial court abused its discretion in determining that it was not necessary to appoint an expert to examine Alvarez.[2] It is unclear whether the parties construe the initial hearing before revocation proceedings as an "informal inquiry" into Alvarez's competency. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (c), (c-1). Regardless, having reviewed the record, including the initial hearing, we fail to find "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial," the threshold requirement which must be met before a trial court is statutorily obligated to appoint an expert or conduct a formal hearing. *See Boyett*, 545 S.W.3d at 563; *see also* TEX. CODE CRIM. PROC. ANN. arts. 46B.004, 46B.021.

Alvarez's noted history of mental health illnesses does not equate to a suggestion of incompetency absent credible evidence that, because of his illness, he lacks "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]," *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); *Turner*, 422 S.W.3d at 695; *see also Anderson*, 2016 WL 3364977, at *3 (noting the essential distinction between impairment and incompetence and concluding that "[a]lthough [Anderson] suffered from mental health issues in the past, there was no evidence suggesting that he may have been incompetent in the legal sense"); *Joseph v. State*, No.

---

[2] Alvarez additionally argues that the trial court "failed to render on the record a finding as to [his] competency to stand trial." Although the trial court made no oral findings of competency, we interpret the trial court's decision to move forward with revocation proceedings, coupled with the court's signed order which included an unequivocal finding that "the Defendant is mentally competent," as a finding of competency.

8

13-11-00461-CR, 2013 WL 1461841, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 11, 2013, pet. ref'd) (mem. op., not designated for publication) ("[E]vidence of past mental impairment is only sufficient to raise a bona fide doubt about competency if the evidence indicates that the defendant is presently 'incapable of consulting with counsel or understanding the proceedings against him.'" (quoting *Iniquez v. State,* 374 S.W.3d 611, 617 (Tex. App.—Austin 2012, no pet.))).

The record indicates the trial court made certain that Alvarez understood why he was before the court, the conditions of community supervision that he was alleged to have violated, and the roles the respective participants played during the revocation hearing. *See Turner*, 422 S.W.3d at 695; *see, e.g., Lindsey v. State*, 310 S.W.3d 186, 189 (Tex. App.—Amarillo 2010, no pet.) (concluding that the trial court's duty to conduct an informal inquiry on a suggestion of incompetence was not triggered when the appellant's few responses indicated he understood the proceedings); *see also Sanchez v. State*, No. 04-20-00379-CR, 2021 WL 1199052, at *2 (Tex. App.—San Antonio Mar. 31, 2021, no pet.) (mem. op., not designated for publication) (concluding the same). Moreover, Alvarez was otherwise cooperative with counsel, answered questions appropriately, and agreed that he assisted counsel in preparing for the hearing by requesting what he believed to be mitigating documents. *See Boyett*, 545 S.W.3d at 566. The State and Alvarez's counsel further opined Alvarez was competent.

While we observe that, nearing the end of punishment proceedings, Alvarez sporadically provided long-winded or tangential answers to questions, Alvarez's responses nonetheless indicated active and engaged participation in the hearing, and in each instance of divergence, he was ultimately able to provide a reasonably lucid

9

response.[3] *See Boyett*, 545 S.W.3d at 564 ("There must be '*some* evidence from which it may rationally be inferred *not only* 1) that the defendant suffers some degree of debilitating mental illness, and that 2) he obstinately refuses to cooperate with counsel to his own apparent detriment, *but also* that 3) his mental illness is what fuels his obstinacy.'" (quoting *Turner*, 422 S.W.3d at 696)); *see also Demarsh v. State*, No. 02–15–00210–CR, 2016 WL 1267702, at \*5 (Tex. App.—Fort Worth Mar. 31, 2016, no pet.) (mem. op., not designated for publication) (concluding that "rambling, grandiose, irrelevant . . . , and perhaps delusional" statements by defendant do not necessarily suggest incompetency); *Jones v. State*, No. 03-12-00286-CR, 2014 WL 1018072, at \*1–2 (Tex. App.—Austin Mar. 11, 2014, no pet.) (mem. op., not designated for publication) (concluding that the appellant's "lengthy answers to the questions posed" and change of "topics during his testimony to discuss threats made to him by various authority figures" did not warrant a competency inquiry given he was ultimately able to "answer the questions asked by the State and by his attorney" and "consult with his lawyer with a reasonable degree of rationality"); *Mitchell v. State*, No. 14-10-01210-CR, 2012 WL 3939971, at \*7 (Tex. App.—Houston [14th Dist.] Sept. 11, 2012, no pet.) (mem. op., not designated for publication) (concluding "the trial court did not err by failing to conduct a competency inquiry based on [Mitchell's] outlandish and tedious testimony" because the trial court may have found the appellant's testimony to be "fabricated, not delusional"); *Green v. State*, No. 10-07-

---

[3] Alvarez additionally argues that this Court should consider Alvarez's letters submitted after the hearing as evidence of Alvarez's incompetency. Alvarez provides no case law in support of this proposition, and we find none. *See Rodriguez v. State*, 329 S.W.3d 74, 78 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (concluding that the reviewing court considers "only the evidence actually known by the trial court up until the point of sentencing" for purposes of determining on appeal whether the trial court erred in its competency determination); *see also Gibson v. State*, No. 13-16-00238-CR, 2017 WL 3530930, at \*4 (Tex. App.—Corpus Christi–Edinburg Aug. 17, 2017, no pet.) (mem. op., not designated for publication) (same).

00211-CR, 2009 WL 1800697, at *3 (Tex. App.—Waco June 24, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding that the appellant's outbursts in court, although "inappropriate violations of court decorum," did not evidence an "inability to communicate with counsel, or factually appreciate the proceedings against him").

Put simply, there was no evidence presented to indicate that Alvarez was unable to "consult with [his] lawyer with a reasonable degree of rational understanding" or that he did not possess a "factual understanding of the proceedings against [him]," and thus, the trial court did not abuse its discretion in declining to appoint an expert to conduct a competency examination. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.004, 46B.021; *Boyett*, 545 S.W.3d at 563; *Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008). We overrule Alvarez's first issue.

### III. EXCESSIVE PUNISHMENT

By his second issue, Alvarez contends that his concurrent twenty-year sentences for aggravated assault with a deadly weapon and aggravated kidnapping are excessive and in violation of the Eighth and Fourteenth Amendments. *See* U.S. CONST. amends. VIII, XVIII; TEX. PENAL CODE ANN. §§ 20.04, 22.02.

An allegation of excessive or disproportionate punishment is a legal claim "embodied in the Constitution's ban on cruel and unusual punishment" and based on a "narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex. Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *see also Meadoux v. State*, 325 S.W.3d

11

189, 193 (Tex. Crim. App. 2010) (acknowledging that the Eighth Amendment is applicable to the states by virtue of the Fourteenth Amendment (citing *Robinson v. California,* 370 U.S. 660, 666–67 (1962)). A successful challenge to proportionality is "exceedingly rare" and requires a finding of "gross disproportionality." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd) (providing that as long as the sentence is assessed within the legislatively determined range, it will unlikely be disturbed on appeal).

However, in order to preserve for appellate review a complaint that a sentence is grossly disproportionate or constituting cruel and unusual punishment, a defendant must present to the trial court a "timely request, objection, or motion" stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a); *see Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) ("It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object."); *Toledo v. State*, 519 S.W.3d 273, 284 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (concluding that to preserve a disproportionate-sentencing complaint, the defendant must make a timely, specific objection in the trial court or raise the issue in a motion for new trial); *see also Brackens v. State*, No. 13-20-00286-CR, 2021 WL 1567508, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 22, 2021, pet. ref'd) (mem. op., not designated for publication) (same).

At no time prior to this appeal did Alvarez argue that the sentences imposed were disproportionate to the offense charged or in violation of his constitutional rights. Accordingly, Alvarez failed to preserve his complaint for review. *See* TEX. R. APP. P. 33.1(a); *Smith*, 721 S.W.2d at 855. And even if Alvarez had preserved this complaint, it

12

lacks merit because Alvarez's twenty-year sentences fall within the statutory range. *See* TEX. PENAL CODE ANN. § 12.32 (providing that the punishment range for a first-degree felony is "imprisonment . . . life or for any term of not more than 99 years or less than 5 years"); § 12.33 (providing that the punishment range for a second-degree felony is "imprisonment . . . for any term of not more than 20 years or less than 2 years"); *see also Trevino*, 174 S.W.3d at 927–28 ("Because the sentence imposed is within the punishment range and is not illegal, we conclude that the rights [the appellant] asserts for the first time on appeal are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection."). We overrule Alvarez's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
23rd day of September, 2021.